Michael SEITZINGER, M.D., Plaintiff-Appellant,

v.

COMMUNITY HEALTH NETWORK and Berlin Memorial
Hospital, Defendants-Respondents.

Supreme Court

*No. 02–2002. Oral argument November 4, 2003.—
Decided March 25, 2004.*

2004 WI 28

(Also reported in 676 N.W.2d 426.)

1

2

For the plaintiff-appellant there were briefs by *Richard F. Rice* and *Fox & Fox S.C.*, Madison, and oral arguments by *Nicholas Kardar, M.D.*

For the defendants-respondents there was a brief by *James W. Greer, Dennis J. Purtell* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral arguments by *James W. Greer.*

An amicus curiae brief was filed by *George Burnett,* Green Bay, and *Thomas Basting, Sr.,* Madison, on behalf of the State Bar of Wisconsin.

¶ 1. N. PATRICK CROOKS, J. This case is before us on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2001–02).[1] Michael Seitzinger, M.D. (Seitzinger) appeals an order of the circuit court, which denied his motion for declaratory judgment and Nicholas Kadar, M.D., J.D.'s (Kadar) petition to be admitted pro hac vice. The court of appeals certified two issues to this court. The first issue certified is whether the legal representation of a physician at a peer review hearing constitutes the practice of law, thereby requiring representation by a licensed Wisconsin attorney. If we answer in the affirmative to the first issue, the second issue is whether there should be an exception to the unauthorized practice of law statute, Wis. Stat. § 757.30 (2001–02),[2] to allow for such unlicensed representation.[3]

---

[1] "Wisconsin Stat. § (Rule) 809.61. Bypass by certification of court of appeals or upon motion of supreme court. The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion. . . . "

[2] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition.

[3] Seitzinger raised a third issue before the court of appeals, which asked the court to determine whether Wis. Stat. § 757.30(2) was unconstitutional as applied to hospital fair hearings. The court of appeals did not address this issue, stating

¶ 2. While we do not answer the first issue certified as to all peer review hearings, we decide in this case that, as a matter of contract, the words "legal counsel" as used in the contract in question are reasonably interpreted to apply only to an attorney licensed to practice law in Wisconsin. We hold that Community Health Network's (CHN) interpretation of the words "legal counsel" in the Corrective Action Procedures and Fair Hearing Plan Addendum to the Medical Staff Bylaws of the Hospital (Bylaws) as referring to an attorney licensed to practice law in Wisconsin was a reasonable one. The general rule is that hospital bylaws can constitute a contract between a hospital and its staff members such as Seitzinger. Since the reasonable interpretation of the contract would require that a person representing Seitzinger be an attorney licensed in Wisconsin, and since the activities that it is reasonable to anticipate Kadar would be engaging in on behalf of Seitzinger would, at the very least, focus on legal issues, we conclude that the circuit court properly denied Seitzinger's motion for declaratory judgment and the petition for Kadar's admission pro hac vice.

¶ 3. While we find that Kadar's likely activities on behalf of Seitzinger would, at the very least, focus on legal issues, it is not necessary that we determine whether such representation would constitute the practice of law, since the reasonable interpretation of the contract resolves this case. A reasonable person would

that it did not have jurisdiction to decide such question because Seitzinger failed to give notice of the allegation to the attorney general as required under Wis. Stat. § 806.04(11). For the same reasons, we also decline to address the issue of whether § 757.30(2) is unconstitutional as applied to a hospital fair hearing. We therefore limit our analysis to the two abovementioned issues.

6

understand that the words "legal counsel" in the Bylaws mean an attorney licensed to practice law in Wisconsin.

¶ 4. We further decline to construct an interpretation, or create an exception, to Wis. Stat. § 757.30 that would permit Kadar, an attorney unlicensed in this state, to represent Seitzinger at his peer review hearing. If Seitzinger appears with an attorney, he must appear with an attorney licensed to practice law in Wisconsin, consistent with the reasonable interpretation of the contract.

I

¶ 5. Seitzinger is a board certified obstetrician-gynecologist licensed to practice medicine in Wisconsin. CHN is a not-for-profit Wisconsin corporation that owns and operates Berlin Hospital (Hospital). Seitzinger was employed with CHN from October 1995 to July 2001.

¶ 6. On May 14, 2001, CHN indefinitely suspended all of Seitzinger's clinical privileges at the Hospital pursuant to Bylaw § 1.4.[4] CHN then sent Seitzinger a letter detailing his right to request his choice of an expedited or standard peer review hearing and explaining the hearing process generally. In the letter, CHN informed Seitzinger that his suspension

---

[4] 1.4 *Suspension of Privileges*

(a) Any of the following: the executive committee, the president of the medical staff, the chief executive officer, the chief of the service in which the practitioner has privileges, the executive committee of the governing body or the governing body shall each have the authority whenever action must be taken in the best interests of patient care in the hospital, to suspend all or any portion of the clinical privileges of a medical staff member and such suspension shall become effective immediately upon imposition.

7

was based on cases in which he "demonstrated serious errors in the preoperative, perioperative and postoperative management of patients (and including surgical complications and follow-up care post-discharge) with the potential for severe harm to the patients." After receiving this letter, Seitzinger timely requested a peer review hearing.

¶ 7. In order to provide some insight into the hearing process, it is necessary to give a brief explanation of the procedures involved. In accordance with the Bylaws, the hearing is held before a hearing committee, which is comprised of three to five active members of the medical staff. Prior to the hearing, the affected practitioner is given a list of seven individuals who may serve on the hearing committee. The affected practitioner is permitted to strike two of the names. During the hearing, pursuant to Bylaw § 3.4, both parties may examine witnesses, introduce exhibits, and submit a written statement at the end of the hearing.[5]

---

[5] 3.4 *Rights of Parties*

"Parties" for the purpose of this Fair Hearing Plan shall be the affected practitioner and the body whose action prompted the request for hearing. During a hearing, each of the parties shall have the right to:

(a) Call and examine witnesses, including expert witnesses.

(b) Introduce exhibits and present relevant evidence.

(c) Question any witness on any matter relevant to the issues.

(d) Impeach any witness.

(e) Rebut any evidence.

(f) Submit a written statement at the close of the hearing.

(g) Record the hearing by use of a court reporter or other mutually acceptable means of recording.

8

¶ 8. Bylaw § 3.3 addresses representation at the peer review hearing. Bylaw § 3.3(a) explains that the affected practitioner is entitled to representation by a member of the active medical staff in good standing.[6] Alternatively, Bylaw § 3.3(b) states that the affected practitioner may be represented by legal counsel at the peer review hearing.[7]

---

If the practitioner who requested the hearing does not testify in his own behalf, the practitioner may be called by the Hearing Committee or the other party and examined as if under cross-examination.

[6] 3.3 *Representation*

(a) *By a Member of the Medical Staff*

The practitioner who requested the hearing shall be entitled to be accompanied by and represented at the hearing by a member of the active medical staff in good standing. The executive committee or the governing body, depending on whose recommendation or action prompted the hearing, shall appoint at least one (1) of its members and/or another person of its choosing to represent it at the hearing to present the facts in support of the professional review action, and to examine witnesses.

[7] 3.3 *Representation*

(b) *By Legal Counsel*

If the affected practitioner desires to be represented by an attorney at any hearing or at any appellate review appearance pursuant to this Plan, his request for such hearing or appellate review must so state. Such notice must also include the name, address and phone number of the attorney. Failure to notify the Hearing Committee in accord with this section shall permit the Committee to preclude the participation by legal counsel or to adjourn the hearing for a period not to exceed twenty (20) days. The executive committee or the governing body may also be allowed representation by an attorney. While legal counsel may attend and assist the respective parties in proceedings provided herein, due to the professional nature of these review proceedings, it is intended that the proceedings will not be judicial in form but a forum for professional evaluation and discussion. Accordingly, the Hearing

9

¶ 9. Seitzinger hired Kadar to assist him at the peer review hearing. Kadar is a board certified obstetrician-gynecologist, a board certified subspecialist in gynecologic oncology, and a member of the New Jersey Bar. CHN objected to Kadar's representation of Seitzinger at the peer review hearing, stating that, since Kadar was not a member in good standing of CHN's medical staff, that he needed to be licensed to practice law in Wisconsin in order to represent Seitzinger.

¶ 10. Seitzinger filed a complaint for declaratory judgment in Green Lake County Circuit Court, seeking a declaration by the court that Kadar could represent him at the peer review hearing. In the alternative, Kadar filed a petition for admission pro hac vice for the hospital hearing and appellate review proceedings. Kadar requested that he be allowed to appear with Seitzinger at the peer review hearing and stated that Kadar would associate with a licensed Wisconsin attorney at those proceedings.[8] Seitzinger subsequently amended his complaint to add a second claim. The second claim alleged that CHN committed a breach of contract,

Committee and/or appellate review body retains the right to limit the role of counsel's active participation in the hearing process. . . .

[8] Seitzinger alleges that CHN originally took the position that Kadar could represent him at the peer review hearing, provided that local counsel was retained. CHN did send a memorandum to Kadar suggesting that Wisconsin counsel be involved. A reasonable interpretation of this correspondence suggests that while CHN anticipated that Seitzinger might seek counsel from Kadar, that an attorney licensed in this state would be required to appear on Seitzinger's behalf at the peer review hearing. The memo referred to § 3.3(b) of the Corrective Action Procedure and Fair Hearing Plan and stated: "This envisions that legal counsel is licensed in the State of Wisconsin."

which arose out of the Medical Executive Committee's recommendation that Seitzinger's clinical privileges be terminated.

¶ 11. CHN filed a motion to dismiss Seitzinger's first claim for failure to state a claim upon which relief can be granted. CHN alleged that Kadar's representation of Seitzinger at the hearing would violate Wis. Stat. § 757.30 because it would allow Kadar to practice law in Wisconsin, even though he is not licensed to do so by this state. With respect to Seitzinger's second claim, CHN filed a motion for summary judgment on the basis that Seitzinger was time-barred from asserting that claim.

¶ 12. The circuit court concluded that Kadar's representation of Seitzinger at the peer review hearing would constitute the unauthorized practice of law under Wis. Stat. § 757.30(2). The circuit court noted that at the peer review hearing Kadar would function as Seitzinger's legal counsel, as that was the only role the Bylaws permitted him to assume. The circuit court further stated that it did not have the authority to admit Kadar pro hac vice. Supreme Court Rule 10.03(4) (2002)[9] allows a judge to admit an attorney for appearances in "his or her court" and to participate "in association with an active member of the state bar of Wisconsin . . . ." The circuit court concluded that because a judge could only admit an attorney for an appearance in the judge's own court, and because the rule contemplates the active involvement of an attorney licensed to practice law in Wisconsin, Seitzinger failed two conditions set forth by SCR 10.03(4). Thus, the

---

[9] Unless otherwise indicated, all references to Supreme Court Rules are to the 2002 edition.

11

circuit court denied Seitzinger's motion for declaratory judgment and Kadar's petition for admission pro hac vice.

¶ 13. Regarding Seitzinger's second claim, the circuit court noted that there was no genuine issue of material fact, as Seitzinger failed to request a hearing regarding the termination of his hospital privileges within the 45–day time limit set by the Bylaws. Thus, the circuit court concluded that CHN was entitled to judgment as a matter of law. Seitzinger appealed the circuit court's decision with respect to his first claim.

¶ 14. As stated previously, the court of appeals certified two issues to this court. The first issue certified is whether the legal representation of a physician at a peer review hearing constitutes the practice of law, thereby requiring representation by a licensed Wisconsin attorney. If we answer in the affirmative to the first issue, the second issue is whether there should be an exception to the unauthorized practice of law statute, Wis. Stat. § 757.30, to allow for such unlicensed representation.

II

¶ 15. In its brief, CHN asserts that, because Seitzinger failed timely to request a hearing regarding the termination of his hospital privileges, his request for a hearing is now moot. Even if Seitzinger's suspension is lifted, CHN points out that his privileges will still be terminated.

¶ 16. Seitzinger asserts that this case is not moot because the underlying controversy is whether CHN's suspension of his hospital privileges was justified. Seitzinger argues that this court's decision as to whether Kadar may represent him at the peer review hearing

12

will directly affect his right to a fair hearing. Seitzinger further notes that the question before this court has already recurred in a case involving another Wisconsin obstetrician-gynecologist whose privileges were revoked by a hospital. This physician has also hired Kadar, and the hearing in that matter has been stayed pending our decision in the present case.

¶ 17. Appellate courts will generally decline to decide moot issues. *State ex rel. Wis. Envtl. Decade v. JCRAR,* 73 Wis. 2d 234, 236, 243 N.W.2d 497, 498 (1976). An issue is moot when a determination is sought that will have no practical effect on an existing legal controversy. *Racine v. J-T Enters. of Am., Inc.,* 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974).

¶ 18. Nevertheless, this court has carved out exceptions with respect to its general policy regarding moot issues. We will decide a case, even though moot, when the issue is of great public importance, when the constitutionality of a statute is at issue, when the situation occurs so frequently that a decision is necessary to guide the circuit courts, when the issue will likely arise again and should be resolved by this court so as to avoid uncertainty, or when the issue will likely be repeated yet evade appellate review because of the length of the appellate review process. *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 229, 340 N.W.2d 460 (1983).

¶ 19. We conclude that this case is not moot, since our decision in this case will have a direct effect upon Seitzinger's peer review hearing regarding his suspension. Simply because Seitzinger cannot appeal the ter-

mination of his hospital privileges does not mean that the blemish of a suspension on his record is inconsequential. Further, a hearing in another case is being stayed pending the outcome of this case. Thus, it is important for both Seitzinger and future parties that we address the issue before us.

## III

¶ 20. We now consider whether the representation of Seitzinger by Kadar at a peer review hearing requires representation by a licensed Wisconsin attorney. In doing so, we focus on the contract between CHN and Seitzinger and its interpretation.

¶ 21. We conclude that contract law satisfactorily addresses the issue of whether "legal counsel," as referenced in Bylaw § 3.3(b), refers to an attorney licensed to practice law in Wisconsin.

▬

¶ 22. The primary goal in contract interpretation is to give effect to the parties' intentions. *Johnson Controls v. Employers Ins. of Wausau,* 2003 WI 108, ¶ 30, 264 Wis. 2d 60, 665 N.W.2d 257. We ascertain the parties' intentions by looking to the language of the contract itself. *Journal/Sentinel, Inc. v. Pleva,* 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990). If the language within the contract is ambiguous, two further rules are applicable: (1) evidence extrinsic to the contract itself may be used to determine the parties' intent and (2) ambiguous contracts are interpreted against the drafter. *Central Auto Co. v. Reichert,* 87 Wis. 2d 9, 19, 273 N.W.2d 360 (1978); *Moran v. Shern,* 60 Wis. 2d 39, 48–49, 208 N.W.2d 348 (1973). Contracts are interpreted to give effect to the parties' intent, as expressed in the contractual language. *Danbeck v. Am. Family*

*Mut. Ins. Co.,* 2001 WI 90, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. *See also Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). Such language is to be interpreted consistent with what a reasonable person would understand the words to mean under the circumstances. *Id.,* ¶ 22. The general rule is that hospital bylaws can constitute a contract between a hospital and its staff. *Bass v. Ambrosius,* 185 Wis. 2d 879, 885, 520 N.W.2d 625 (Ct. App. 1994); *Keane v. St. Francis Hosp.,* 186 Wis. 2d 637, 651, 522 N.W.2d 517 (Ct. App. 1994). The bylaws bind both parties to the terms contained within. *Bass,* 185 Wis. 2d at 885. Applications of hospital bylaws are reviewed under a deferential standard of review. *Hale v. Stoughton Hosp. Ass'n,* 126 Wis. 2d 267, 276, 376 N.W.2d 89 (Ct. App. 1985). Based on these cases, we conclude that a hospital's interpretation of its bylaws should stand if reasonable.

¶ 23. Seitzinger contends that in order to determine whether representation of an affected practitioner at a peer review hearing is the practice of law, the court must conduct a factual inquiry into the degree of legal knowledge and skill required to represent the client. Seitzinger argues that a fair hearing is not a disciplinary proceeding; thus, the hearing committee is unauthorized to take any decisive action against the affected practitioner. The committee's sole task, Seitzinger contends, is to review adverse actions that have already been implemented against the affected practitioner and determine whether those actions are supported by substantial medical facts. Thus, Seitzinger argues that Kadar's role would be confined to rendering scientific or medical advice and not protecting Seitzinger's legal rights.

¶ 24. In addition, Seitzinger asserts more generally that not everything attorneys do for their clients

15

constitutes the practice of law. As proof that the present situation does not constitute the practice of law, Kadar points to CHN's own Bylaws. If a physician is capable of assuming the same role as an attorney at these hearings, Seitzinger contends that simply because an attorney occupies this role at the hearing does not mean that he or she is engaging in the practice of law. Seitzinger asserts that he seeks Kadar's representation because of his ability to draw upon his medical knowledge and experience, not for the benefit of his legal services.

¶ 25. CHN asserts that Kadar would be advising Seitzinger of his rights and CHN's obligations, thus providing legal advice and services to Seitzinger. CHN contends that simply because the hearing does not take place in a courtroom setting does not change this fact. CHN rejects Seitzinger's portrayal of the hearing as non-disciplinary in nature. Instead, CHN asserts that a finding by the committee that there is evidence supporting the adverse action against the affected practitioner is clearly unfavorable and part of a disciplinary process. While Kadar may also assist Seitzinger with the scientific evidence he presents at the hearing, this too does not negate the fact that Kadar is rendering legal advice. CHN also points out that witnesses are examined, exhibits are introduced, and the affected practitioner may submit a written statement at the close of the peer review hearing. Thus, according to CHN, Seitzinger would clearly benefit from Kadar's legal advice and assistance.

¶ 26. CHN further argues that, although Kadar is a physician, Seitzinger hired Kadar to provide him with legal services. CHN contends that, in keeping with the Bylaws, Kadar's role was limited to that of attorney. Because Kadar is not a member of the active medical staff in good standing, he could not represent Seitzinger

16

under Bylaw § 3.3(a). Although the person subject to the hearing may choose between a physician and an attorney as a representative, CHN asserts that this does not lessen the attorney's role in providing legal advice related to the hearing to his or her client. In fact, CHN contends, the only reason an affected practitioner would retain an attorney to assist at the hearing, instead of an active CHN physician in good standing, would be to have the benefit of the attorney's legal advice and services.

■

¶ 27. We conclude that interpreting the words "legal counsel" in the Hospital's Bylaws to refer to an attorney licensed to practice law in Wisconsin is clearly reasonable. To construe it otherwise might permit attorneys unlicensed in the state or non-attorneys to violate Wis. Stat. § 757.30.[10]

¶ 28. As Wis. Stat. § 757.30 makes clear, a person may engage in the practice of law in or out of court. Thus, simply because the peer review hearing takes place outside the confines of a traditional courtroom does not mean that a person, acting in a representative capacity for his or her client, cannot be deemed to be practicing law.

---

[10] Wisconsin Stat. § 757.30(2) states:

Every person who appears as agent, representative or attorney, for or on behalf of any other person,. or any firm, partnership, association or corporation in any action or proceeding in or before any court of record, circuit or supplemental court commissioner, or judicial tribunal of the United States, or of any state, or who otherwise, in or out of court, for compensation or pecuniary reward gives professional legal advice not incidental to his or her usual or ordinary business, or renders any legal service for any other person, or any firm, partnership, association or corporation, shall be deemed to be practicing law within the meaning of this section.

¶ 29. In *Jadair Inc. v. U.S. Fire Ins. Co.*, 209 Wis. 2d 187, 204, 562 N.W.2d 401 (1997), we stated that the legislature's intent in enacting Wis. Stat. § 757.30 was clear and, thus, held that a corporation's notice of appeal was rendered fatally defective due to the fact that it was not signed by an attorney. In reaching this conclusion, we noted that the primary purpose of statutes preventing the unauthorized practice of law is to protect the public against inadequate or unethical representation. *Id.* at 201–02.

¶ 30. In *State ex rel. Junior Ass'n of Milwaukee Bar v. Rice,* 236 Wis. 38, 53, 294 N.W. 550 (1940), noting the difficulty that courts generally have in defining the practice of law, this court concluded that determining whether a person is engaging in the practice of law must be conducted on a case-by-case basis. In *Rice,* we rejected the defendant's contention that he could not have violated the state's unauthorized practice of law statute[11] because everything he did was "incidental to his usual or ordinary business of adjusting losses for insurance companies." We concluded that, although a layperson may adjust losses for insurance companies, an insurance adjuster was prohibited from doing anything that resembled the practice of law. This court, in *Rice,* discussed a number of activities, including rendering legal advice for compensation, that amounted to the practice of law. *Rice,* 236 Wis. at 54–57.[12]

---

[11] At the time *State ex rel. Junior Ass'n of Milwaukee Bar v. Rice,* 236 Wis. 38, 53, 294 N.W. 550 (1940), was decided, the applicable statute was Wis. Stat. § 256.30. Section 256.30 was amended, effective August 1, 1978, and renumbered as Wis. Stat. § 757.30.

[12] In *Rice,* 236 Wis. at 53, the insurance adjuster engaged in numerous other lawyer-like activities, such as advising an insurance company as to his opinion of its potential liability,

¶ 31. In *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d 193, 109 N.W.2d 685 (1961), this court created a narrow rule that permitted a real estate broker to fill in the blank spaces on standard conveyancing forms, when transferring the title of a client's real estate, without violating the prohibition against a layperson practicing law. We stated that the regulation of the practice of law is a judicial power vested in the Wisconsin Supreme Court. *Id.* at 206. Nevertheless, we noted that the legislature may aid the court in exercising its power. *Id.* at 203. We reasoned that, although lapse of time alone does not make a legal violation attain legality, the brokers had been using these forms for over 100 years without incident. *Id.* at 204. Thus, we concluded that because this practice had not posed any danger to the public, or subjected it to undue expense, it would be against the public interest to halt this long-standing method of conveyancing and require that only licensed attorneys be permitted to complete the forms. *Id.* at 205.

¶ 32. In *State ex rel. State Bar v. Keller,* 21 Wis. 2d 100, 102, 123 N.W.2d 905 (1963), we modified our earlier injunction preventing a layperson from engaging in the unauthorized practice of law,[13] in order to permit a person to represent others before the Interstate Commerce Commission in Wisconsin, as authorized by the person's federal license. Keller attempted to persuade this court that, where leases and contracts were approved by the Interstate Commerce Commis-

advising an insurance company whether or not to settle a claim, attempting to negotiate settlements between the insurance company and injured persons, and dictating and entering into stipulations.

[13] *See State ex rel. State Bar v. Keller,* 16 Wis. 2d 377, 114 N.W.2d 796 (1962).

19

sion, an attorney licensed by the Commission, but unlicensed by the State of Wisconsin, should be able to draft such leases and contracts. We noted:

> Although we recognize. that he may advise whether a particular lease or contract complies with federal law or regulations, leases and contracts create substantive rights and obligations of parties and to prepare them and advise concerning their significance other than their standing under the interstate commerce laws and regulations would constitute the practice of law outside the scope of his practice before the interstate commerce commission.

*Id.* at 103. Thus, we reasoned that Keller could not engage in the more general practice of advising parties of their substantive rights and obligations. *Id.* We also concluded that Keller should be enjoined from acting in a representative capacity for his clients before the Wisconsin Public Service Commission. *Id.* at 104.

¶ 33. Based on the abovementioned case law, we conclude that the reasoning regarding Wis. Stat. § 757.30 set forth in *Jadair* and *Rice* is more applicable to the present situation than the narrow exceptions recognized in *Dinger* and *Keller.* As noted in *Jadair,* we are concerned with protecting people against the inadequate representation that unlicensed attorneys might provide to their clients. Granted, an affected practitioner appearing at a peer review hearing may choose the assistance of an active CHN physician in good standing. However, as CHN aptly points out, if the affected practitioner selects legal counsel, instead of a physician, it would be in order to secure the benefit of representation by a person who is capable of giving accurate advice regarding legal rights under Wisconsin law.

¶ 34. We explained in *Rice* that a layperson must refrain from engaging in any acts that resemble the

20

practice of law. Kadar suggests that he will be assisting Seitzinger only by marshalling the scientific and medical evidence presented at the hearing. Yet, as noted previously, Bylaw § 3.3(a) prevents Kadar from assisting Seitzinger in his capacity as a physician, as Kadar is not a member of the active medical staff of CHN in good standing. Thus, it is clear under the Bylaws that the only role Kadar may assume at the hearing is that of Seitzinger's legal counsel. Allowing Kadar to represent Seitzinger at such a peer review hearing where, at the very least, he could be expected to focus on legal issues, would mean that he would be acting as Seitzinger's legal counsel.

¶ 35. Although *Dinger* and *Keller* present situations where we have held that unlicensed attorneys and non-attorneys may engage in limited lawyer-like activities, we have concluded that the holdings in those cases were sufficiently narrow, and limited in scope, so as to be inapplicable to Kadar's proposed representation of Seitzinger.

¶ 36. It is not necessary that we determine whether Kadar's representation of Seitzinger would constitute the practice of law for purposes of the statute, since the reasonable interpretation of the contract resolves this case. A reasonable person would understand that the words "legal counsel" in the Bylaws mean an attorney licensed to practice law in Wisconsin.

¶ 37. Based on the Hospital's Bylaws which, under application of the general rule, form a contract between Seitzinger and CHN, we conclude that, if Seitzinger chooses to have legal counsel present at the peer review hearing, he must choose an attorney who is licensed to practice law in this state. CHN's interpretation of the relevant section is a reasonable one. Further,

the activities it is reasonable to anticipate that Kadar would be engaging in on behalf of Seitzinger would, at the very least, focus on legal issues. As we stated in *Rice,* 236 Wis. at 54: "Giving advice as to legal rights is clearly the function of a lawyer."

## IV

¶ 38. While it is not absolutely necessary to address the second certified issue, we conclude that it would be helpful to do so. Therefore, we next consider whether there should be an exception to the unauthorized practice of law statute, Wis. Stat. § 757.30, to allow for such unlicensed representation at a hospital peer review hearing.

¶ 39. As noted previously, the Wisconsin Supreme Court is exclusively vested with the power to determine what constitutes the practice of law. *Dinger,* 14 Wis. 2d at 202. Nevertheless, we are aided in this task by the legislature. *Id.* at 203. The only exception the legislature has made to Wis. Stat. § 757.30 is Wis. Stat. § 799.06(2), which permits non-lawyers to represent themselves in small claims court. *Jadair,* 209 Wis. 2d at 202. When the legislature clearly enumerates exceptions to a statute, we may assume that it intended to preclude any additional exceptions unless specifically enumerated. *Id.* (citing *In Interest of Angel Lace M.,* 184 Wis. 2d 492, 512, 516 N.W.2d 678 (1994)). The legislature has not created an exception which would permit an unlicensed attorney to represent a physician at a peer review hearing. Moreover, we decline to exercise our power to create an exception applicable to these circumstances as well.

¶ 40. In *State v. Olexa,* 136 Wis. 2d 475, 481, 402 N.W.2d 733 (Ct. App. 1987), the court of appeals concluded that a defendant was not denied her due process right when she was not permitted to have an attorney unlicensed in this state appear on her behalf in court. Although *Olexa* is distinguishable from this case, as it involved whether an unlicensed attorney could appear on behalf of a client in a Wisconsin circuit court, the message is still clear: there is no due process right to be represented by counsel unlicensed in Wisconsin.

¶ 41. Finally, we conclude that Kadar cannot be admitted under SCR 10.03(4).[14] Supreme Court Rule 10.03(4) permits a judge to admit "nonresident counsel to appear in his or her court." Because Kadar is appearing at a hospital peer review hearing, the circuit court correctly noted that it could not admit Kadar pro hac vice. Moreover, even though Rule 10.03(4) states that nonresident counsel may appear "in association with an active member of the state bar of Wisconsin," this wording is also linked to the requirement that the proceeding be before the judge permitting the nonresident attorney to represent the client in his or her court. Clearly, Kadar cannot be admitted pro hac vice under SCR 10.03(4), and we decline to construct an interpre-

---

[14] SCR 10.03 Membership

(4) Only active members may practice law. No individual other than an enrolled active member of the state bar may practice law in this state or in any manner purport to be authorized or qualified to practice law. A judge in this state may allow a nonresident counsel to appear in his or her court and participate in a particular action or proceeding in association with an active member of the state bar of Wisconsin who appears and participates in the action or proceeding.

23

tation, or create an exception, which would allow for his admission under these circumstances.[15]

## V

¶ 42. While we do not answer the first issue certified as to all peer review hearings, we decide in this case that, as a matter of contract, the words "legal counsel" must be interpreted to apply only to an attorney licensed to practice law in Wisconsin. In sum, we hold that CHN's interpretation of the words "legal counsel" in the Bylaws as referring to an attorney licensed to practice law in Wisconsin was a reasonable one. The general rule is that hospital bylaws can constitute a contract between a hospital and its staff members such as Seitzinger. Since the reasonable interpretation of the contract would require that a person representing Seitzinger be an attorney licensed in Wisconsin, and since the activities that it is reasonable to anticipate Kadar would be engaging in on behalf of Seitzinger would, at the very least, focus on legal issues, we conclude that the circuit court properly denied Seitzinger's motion for declaratory judgment and his petition for Kadar's appearance pro hac vice.

¶ 43. While we find that Kadar's likely activities on behalf of Seitzinger would, at the very least, focus on legal issues, it is not necessary that we determine whether such representation would constitute the practice of law under the statute, since the reasonable interpretation of the contract resolves this case. A

[15] This court currently has before it a petition asking the court to establish a committee that would, among other things, review the issue of the unauthorized practice of law. This is yet another reason that it is inappropriate, at this time, for us to establish an exception.

reasonable person would understand that the words "legal counsel" in the Bylaws mean an attorney licensed to practice law in Wisconsin.

¶ 44. We further decline to construct an interpretation, or create an exception, to Wis. Stat. § 757.30 that would permit Kadar, an attorney unlicensed in this state, to represent Seitzinger at his peer review hearing. If Seitzinger appears with an attorney, he must appear with an attorney licensed to practice law in Wisconsin, consistent with the reasonable interpretation of the contract.

*By the Court.*—The order of the circuit court is affirmed.

¶ 45. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). This case involves the interpretation of a hospital's bylaws pertaining to a doctor's right to representation at a peer review hearing to determine whether his clinical privileges should be suspended.

¶ 46. The relevant hospital bylaw, § 3.3, governs the representation of the parties at the peer review hearing. Bylaw § 3.3(a) provides that the charging entity shall be represented by one of its members "and/or another person of its choosing." The latter phrase does not explicitly state that the other person must be a staff doctor. The bylaw also explicitly allows the charging entity to be represented by an attorney.

¶ 47. Bylaw § 3.3(a) provides that the affected doctor "shall be entitled to be accompanied by and represented at the hearing by a member of the active medical staff in good standing." The bylaw also allows the affected doctor to be represented by "an attorney."

25

¶ 48. .The bylaws do not specify whether an attorney representing either the charging entity or the affected doctor must be "licensed in Wisconsin."[1]

[1] Bylaw 3.3 provides in full as follows:

*Representation*

*(a) By a Member of the Medical Staff*

The practitioner who requested the hearing shall be entitled to be accompanied by and represented at the hearing by a member of the active medical staff in good standing. The executive committee or the governing body, depending on whose recommendation or action prompted the hearing, shall appoint at least one (1) of its members and/or another person of its choosing to represent it at the hearing to present the facts in support of the professional review action, and to examine witnesses.

*(b) By Legal Counsel*

If the affected practitioner desires to be represented by an attorney at any hearing or at any appellate review appearance pursuant to this Plan, his request for such hearing or appellate review must so state. Such notice must also include the name, address and phone number of the attorney. Failure to notify the Hearing Committee in accord with this section shall permit the Committee to preclude the participation of legal counsel or to adjourn the hearing for a period of not to exceed twenty (20) days. The executive committee for the governing body may also be allowed representation by an attorney. While legal counsel may attend and assist the respective parties in proceedings provided herein, due to the professional nature of these review proceedings, it is intended that the proceedings will not be judicial in form but a forum for professional evaluation and discussion. Accordingly, the Hearing Committee and/or appellate review body retains the right to limit the role of counsel's active participation in the hearing process. Any practitioner who incurs legal fees in his behalf shall be solely responsible for payment thereof.

The bylaws sometimes use the word "attorney" and sometimes the phrase "legal counsel." These terms do not seem to have different meanings in the bylaws.

¶ 49. The majority opinion treats the bylaws as a contract between Dr. Seitzinger and the hospital, Community Health Network (CHN), and asserts that it will interpret the bylaws by applying principles of contract interpretation.[2]

¶ 50. The majority opinion recites several principles of contract interpretation[3] but fails to apply them. Rather, the majority opinion adopts as reasonable the hospital's interpretation of the bylaws that Mr. Kadar (a doctor who is also an attorney licensed to practice in New Jersey), whom Dr. Seitzinger wanted as his representative at the peer review hearing, must be an attorney licensed to practice law in Wisconsin. The majority opinion concludes that because Mr. Kadar cannot "assist[] Seitzinger in his capacity as a physician, as Kadar is not a member of the active medical staff of CHN in good standing[,] . . . it is clear . . . that the only role Kadar may assume at the hearing is that of Seitzinger's legal counsel,"[4] and that Mr. Kadar cannot assume that role because he is not licensed to practice law in this state. The majority opinion concludes that to construe the contract "otherwise might permit attorneys unlicensed in the state or non-attorneys to violate Wis. Stat. § 757.30 [which defines the practice of law and prohibits the unauthorized practice of law]."[5]

---

[2] Majority op., ¶¶ 2, 20, 22. *See Bass v. Ambrosius,* 185 Wis. 2d 879, 885, 520 N.W.2d 625 (Ct. App. 1994) (treating hospital bylaws as a contract between physician and hospital); *Keane v. St. Francis Hosp.,* 186 Wis. 2d 637, 651, 522 N.W.2d 517 (Ct. App. 1994) (same).

[3] Majority op., ¶ 22.

[4] *Id.,* ¶ 34.

[5] *Id.,* ¶ 27. *See also id.,* ¶ 4.

¶ 51. I agree that rules of contract interpretation govern this case. The majority opinion, however, fails to apply well-worn principles of contract interpretation in construing the terms of the contract.

¶ 52. I set forth seven rules of contract interpretation relevant to the present case and apply them to the undisputed facts. Each rule, and the rules read together, points to the conclusion that the hospital's bylaws should be interpreted to mean that if an attorney represents Dr. Seitzinger at the peer review hearing, the attorney need not be licensed in the State of Wisconsin.

¶ 53. The seven rules are set forth in order of their increasing scope, from the rule pertaining to the objective interpretation of the text of a contract to the rule requiring a court to consider the reasonableness of competing interpretations. I conclude that the majority opinion's interpretation of the hospital bylaws violates or ignores these rules and ultimately fails to reach a reasonable interpretation of the bylaws. The majority opinion's interpretation is based on the vague concept that representation at a peer review hearing would "focus on legal issues"[6] or "resemble the practice of law"[7] and upon its conclusion, which it purports not to have reached, that the representation in question constitutes the practice of law. The majority opinion's interpretation renders the bylaws internally contradictory, unfair to Dr. Seitzinger, and fails to foster the public policy underlying the licensing of attorneys and the prohibition on the unauthorized practice of law. For these

[6] *See, e.g., id.,* ¶¶ 2, 3.

[7] *See, e.g., id.,* ¶¶ 30, 34.

28

reasons, I conclude that the majority opinion's interpretation is unreasonable and contrary to the intentions of the parties.

**¶ 54. Rule 1. The inquiry into the parties' intent is not a search for subjective intent but rather focuses on the language the parties used.[8] Words in a contract are to be read as a reasonable person would under the circumstances.[9] It is the objective meaning of the contract, not the subjective intent of the parties, that controls.[10] The subjective intent of the parties entering into a contract is immaterial.[11] "[T]he law presumes that the parties understood the import of their contract and that they had the intention which**

---

[8] 11 Richard A. Lord, *Williston on Contracts* § 31:4 at 271–72 (4th ed. 1999).

[9] *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150.

[10] *Williston, supra* note 8, § 31:4 at 280–83, § 32:2 at 405; *State ex rel. Siciliano v. Johnson*, 21 Wis. 2d 482, 487, 124 N.W.2d 624 (1963).

[11] *Kernz v. J.L. French Corp.*, 266 Wis. 2d 124, 139–41, 667 N.W.2d 751 (Ct. App. 2003) ("[T]he creation of an enforceable agreement is usually predicated on the language used in the contract and the *expressed* intentions of the parties."). *See* 17A Am. Jur. 2d *Contracts* 352, 368 (1991) (It is not necessarily the real intent, but the expressed or apparent intent, which is sought. Indeed, a party's subjective, undisclosed intent is immaterial to the interpretation of a contract. The court will not attempt to ascertain the actual mental processes of the parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.).

its terms manifest."[12] **The common meaning of language will be given to the words of a contract.**[13]

¶ 55. As the majority opinion recognizes, the primary goal of contract interpretation is to give effect to the parties' intentions.[14] Our cases have frequently stated that judicial interpretation of a contract is not to determine what the parties "intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use."[15] The majority opinion recites this rule and repeatedly states that "a reasonable person would understand that the words 'legal counsel' in the Bylaws mean an attorney licensed to practice law in Wisconsin," but provides no reasoning to support this assertion.[16]

¶ 56. The parties' intentions are set forth in the language of the contract. Here the contract uses the word "attorney." The contract's language is not limited to a lawyer licensed to practice in Wisconsin.

¶ 57. The drafter, the hospital, easily could have inserted words limiting the state of licensure. It did not. Applying Rule 1, I conclude that because the text does not delineate the state of licensure, the parties did not intend to limit attorneys who provide representation at peer review hearings to those licensed in Wisconsin.

---

[12] *Williston, supra* note 8, § 31:4 at 275–77.

[13] *Id.,* § 32:3 at 408; 5 Margaret A. Kniffen, *Corbin on Contracts,* § 24.6 at 27 (rev. ed. 1998).

[14] Majority op., ¶ 22.

[15] *Miller v. Miller,* 67 Wis. 2d 435, 442, 227 N.W.2d 626 (1975) (citations omitted), *cited with approval in Koenings v. Joseph Schlitz Brewing Co.,* 126 Wis. 2d 349, 366, 377 N.W.2d 593 (1985), *State ex rel. Journal/Sentinel Inc. v. Pleva,* 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990).

[16] Majority op., ¶¶ 3, 36, 43.

¶ 58. **Rule 2: A court should not add terms or provisions to the contract.**[17] "In construing a contract, 'courts cannot insert what has been omitted or rewrite a contract made by the parties.' "[18].

¶ 59. The majority opinion does not mention this rule but violates it nonetheless by adding the words "licensed to practice law in the state of Wisconsin" after the word "attorney." Flouting this rule, the majority opinion nevertheless claims to have made a reasonable

---

[17] *Williston, supra* note 8, § 31:6 at 313 ("Traditionally, the general rule which prohibits a court from rewriting the parties' agreement while purporting to construe it also precludes the court from adding terms or provisions to the contract. Additional obligations or undertakings may not be imposed upon a party to a contract under the guise or authority of contractual construction.").

[18] *Columbia Propane, L.P., v. Wis. Gas Co.,* 2003 WI 38, ¶ 12, 261 Wis. 2d 70, 661 N.W.2d 776. *See also Danbeck,* 245 Wis. 2d 186, ¶ 10 (Courts are "to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake."); *Levy v. Levy,* 130 Wis. 2d 523, 533, 388 N.W.2d 170 (1986) ("In the guise of construing a contract, courts cannot insert what has been omitted or rewrite a contract made by the parties."); *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979) ("The court cannot redraft the agreement, but must adopt that construction which will result in a reasonable, fair and just contract as opposed to one that is unusual or extraordinary."); *Batavian Nat'l Bank of LaCrosse v. S. & H. Inc.,* 3 Wis. 2d 565, 569, 89 N.W.2d 309 (1958) ("In the name of construction, courts cannot insert what has been omitted or rewrite a contract made by parties."); *Jarvis v. Northwestern Mut. Relief Ass'n,* 102 Wis. 546, 549, 78 N.W. 1089 (1899) ("Such a construction of the insurance contract would be exceedingly unreasonable,—would add, we may say, something not found in the language used in the contract by any rational construction of it, and would be contrary to all authority on the question.").

interpretation. It is highly dubious that an interpretation that rewrites the contract language is reasonable.

¶ 60. Applying Rule 2, I would not add words to the bylaws. I would stick to the words of the bylaws as written and conclude that the parties intended the word "attorney" to mean any attorney regardless of the state in which the attorney is licensed.

¶ 61. **Rule 3. If a contract is characterized as ambiguous because it can be interpreted in more than one reasonable way,[19] extrinsic evidence may be used to determine the parties' intentions.[20]**

¶ 62. The bylaws are silent on the subject of an attorney's state of licensure and thus may be viewed, for purposes of this case, as susceptible to at least two interpretations: (1) the attorney needs to be licensed in Wisconsin, or (2) the attorney need not be licensed in Wisconsin. The hospital argues that the bylaws require a Wisconsin-licensed lawyer to appear at the peer review hearing; Dr. Seitzinger argues that any lawyer can appear on his behalf.

¶ 63. Although Rule 3 is recited by the majority opinion,[21] this rule has no application to the present

---

[19] *Danbeck,* 245 Wis. 2d 186, ¶ 10 ("Contract language is ambiguous if it is susceptible to more than one reasonable interpretation."); *Dieter v. Chrysler Corp.,* 2000 WI 45, ¶ 15, 234 Wis. 2d 670, 610 N.W.2d 832 (same); *Donaldson v. Urban Land Interests, Inc.,* 211 Wis. 2d 224, 230–31, 564 N.W.2d 728 (1997) (same); *Tempelis v. Aetna Cas. & Sur. Co.,* 169 Wis. 2d 1, 9, 485 N.W.2d 217 (1992) (same).

[20] Majority op., ¶ 22. Words in a contract are ambiguous when they are susceptible to more than one reasonable interpretation. *Just v. Land Reclamation, Ltd.,* 155 Wis. 2d 737, 744–45, 157 Wis. 2d 507, 456 N.W.2d 570 (1990).

[21] Majority op., ¶ 22.

case. No evidence (extrinsic or otherwise) was presented in the circuit court. The parties merely presented briefs and argued the law before the circuit court.

¶ 64. **Rule 4. If a contract is characterized as ambiguous because it can be interpreted in more than one reasonable way, the contract is to be interpreted against the drafter because the language was presumptively within the control of the party drafting the agreement and that party could have made it clear.**[22] **"[A]mbiguous agreements are to be construed most strongly against the maker or drafter."**[23] **This rule is especially applicable when the drafter wants to interpret the ambiguous language in its favor.**[24]

---

[22] *Williston, supra* note 8, § 32:12 at 471–72 ("Ambiguity—the possibility that a word or phrase in a contract might be reasonably and plausibly subject to more than one meaning—frequently occurs in the language used by the parties to express their meaning. Since the language is presumptively within the control of the party drafting the agreement, it is a generally accepted principle that any ambiguity in that language will be interpreted against the drafter.").

[23] *Moran v. Shern,* 60 Wis. 2d 39, 49, 208 N.W.2d 348 (1973). *See also Dieter,* 234 Wis. 2d 670, ¶ 15; *Tempelis,* 169 Wis. 2d at 10; *Just v. Land Reclamation, Ltd.,* 155 Wis. 2d 737, 745, 456 N.W.2d 570 (1990); *Capital Invs., Inc. v. Whitehall Packing Co.,* 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979); *Cent. Auto Co. v. Reichert,* 87 Wis. 2d 9, 19, 273 N.W.2d 360 (1978); *Strong v. Shawano Canning Co., Inc.,* 13 Wis. 2d 604, 609, 109 N.W.2d 355 (1961).

[24] *Corbin, supra* note 13, § 24.27 at 282–83 ("If, however, it is clear that the parties did attempt to make a valid contract and the only remaining question is which of two possible and reasonable meanings should be adopted, the court will often adopt the meaning that is less favorable in its legal effect to the

¶ 65. The majority opinion recites Rule 4,[25] fails to apply it, and proceeds to violate it.

¶ 66. The rationale for construing an "ambiguous agreement" against the drafter is well articulated in the Restatement (Second) of Contracts, § 206, Comment A: The drafter had the power to make the contract clear and the drafter of a standardized contract had the stronger bargaining position. Comment A reads as follows:

> Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position, but it is not limited to such cases.

¶ 67. The hospital's bylaws appear to constitute the kind of standardized contract between two parties of unequal bargaining power that particularly justifies an interpretation against the drafter. Dr. Seitzinger, in all probability, had no control over the language of the bylaws and was in no position to bargain for more favorable language when he obtained his employment.

party who chose the words. This technique is known as '*contra proferentem.*' "). *See Donaldson v. Urban Land Interests, Inc.,* 211 Wis. 2d 224, 230–31, 564 N.W.2d 728 (1997) (applying rule of *contra proferentem*).

[25] Majority op., ¶ 22.

34

¶ 68. Assuming that this contract is "ambiguous" and applying Rule 4, I conclude that the bylaws should be interpreted against the hospital and that Dr. Seitzinger, who wishes to appear at the hearing with an attorney licensed in another state, should be allowed to do so.

¶ 69. **Rule 5: Interpretation of a contract is a question of law for the court if the contract is unambiguous or if the contract is ambiguous but no extrinsic evidence has been presented.[26] "Construction of bylaws and their application to undisputed facts present a question of law that we review de novo."[27] The court need not give deference to the drafter's interpretation.[28]**

¶ 70. The majority opinion does not recite Rule 5. Instead, the majority opinion ignores this rule and violates it by asserting that "[a]pplications of hospital bylaws are reviewed under a deferential standard of

[26] *Williston, supra* note 8, § 30:7 at 92–93; *Corbin, supra* note 13, § 24.30 at 338.

[27] *Keane v. St. Francis Hosp.,* 186 Wis. 2d 637, 649, 522 N.W.2d 517 (Ct. App. 1994).

[28] *Danbeck,* 245 Wis. 2d 186, ¶ 10 ("The interpretation of an insurance contact is a question of law subject to de novo review."); *Dieter,* 234 Wis. 2d 670, ¶ 15 ("We review the interpretation of a warranty or any other contract *de novo,* and in doing so, our primary purpose is to ascertain and give effect to the intent of the parties."); *Tempelis,* 169 Wis. 2d at 9 ("Contracts of insurance are controlled by the same principles of law that are applicable to other contracts . . . . The construction of an insurance contract is a question of law which we review *de novo.*") (quoting *Cardinal v. Leader Nat'l Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992)); *Katze v. Randolph & Scott Mut. Fire Ins. Co.,* 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984) ("[T]he construction of the words and clauses in an insurance policy is a question of law for the court.").

review" and that "a hospital's interpretation of its bylaws should stand if reasonable."[29] To support its conclusion, the majority opinion relies on (but misreads) *Hale v. Stoughton Hospital Ass'n,* 126 Wis. 2d 267, 376 N.W.2d 89 (Ct. App. 1985).

¶ 71. The *Hale* decision does not support the majority opinion's conclusion that "a hospital's interpretation of its bylaws should stand if reasonable."[30] In *Hale,* the bylaw at issue required the hospital to have an honest belief that termination was in the best interests of the hospital. There was no dispute over the legal meaning of the phrases "honest belief" or "best interests" as used in the bylaws. The court of appeals in *Hale* did not show deference to the hospital's legal interpretation of these phrases. Rather, the court of appeals deferred to the board's substantive determination of what was in the best interests of the hospital. The court of appeals concluded that it would not "inquire into the board's decision-making process to determine whether its decision is correct. Inquiry is limited to whether the board really believed Hale's termination was in the hospital's best interests."[31]

¶ 72. In *Keane v. St. Francis Hospital,* 186 Wis. 2d 637, 522 N.W.2d 517 (Ct. App. 1994), a case subsequent to *Hale,* when an interpretation of hospital bylaws was

---

[29] Majority op., ¶ 22.

[30] Majority op., ¶ 23. Although "courts normally do not interfere with a reasonable management decision concerning staff privileges . . . hospitals must adopt rules, regulations, and bylaws concerning procedures for admission to staff membership, and they may not arbitrarily prevent otherwise qualified doctors from exercising staff privileges." *Belmar v. Cipolla,* 475 A.2d 533, 538 (N.J. 1984) (citation omitted).

[31] *Hale v. Stoughton Hosp. Ass'n, Inc.,* 126 Wis. 2d 267, 276, 376 N.W.2d 89 (Ct. App. 1985).

at issue, the court of appeals did not defer to the hospital's proposed interpretation of its bylaws but rather concluded that "[c]onstruction of bylaws and their application to undisputed facts present a question of law that we review *de novo*."[32] This correct and relevant statement of the law should be followed in the present case. The majority opinion cites *Keane* but does not abide by it.[33]

¶ 73. Applying Rule 5 and using the objective standard of interpretation, not adding words to the bylaws, and interpreting language against the drafter, I conclude as a matter of law that the parties did not intend the bylaws to provide that an attorney must be licensed in Wisconsin to appear with an affected doctor at a peer review hearing.

¶ 74. **Rule 6: "The contract must be read as a whole and every part will be read with reference to the whole."[34] "The general rule as to the construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole."[35]**

---

[32] *Keane v. St. Francis Hosp.,* 186 Wis. 2d 637, 649, 522 N.W.2d 517 (Ct. App. 1994).

[33] Majority op., ¶ 22.

[34] *Williston, supra* note 8, § 32:5 at 420–21 ("A contract will be read as a whole and every part will be read with reference to the whole. If possible, the contract will be so interpreted as to give effect to its general purpose as revealed within its four corners or in its entirety."), § 32:11 at 464 ("A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument . . . .").

[35] *Tempelis,* 169 Wis. 2d at 9; *see also McCullough v. Brandt,* 34 Wis. 2d 102, 106, 148 N.W.2d 718 (1967) ("In the interpretation of a contract, the contract must be considered as

¶ 75. The majority opinion fails to recite this rule and violates it by ascertaining the meaning of a bylaw without considering the bylaws as a whole. In this case, the hospital's bylaws limit the scope of representation at the peer review hearing so that it is evident that the parties did not intend that an attorney must be licensed to practice law in Wisconsin in order to assist at the peer review hearing.

¶ 76. The bylaws refer to the hearing as a non-judicial forum at which the hospital is free to limit the role of an attorney's active participation. Specifically, Bylaw § 3.3(b) provides that "[w]hile legal counsel may attend and assist the respective parties in proceedings provided herein, due to the professional nature of these review proceedings, it is intended that the proceedings will not be judicial in form but a forum for professional evaluation and discussion. Accordingly, the Hearing Committee and/or appellate review body retains the right to limit the role of counsel's active participation in the hearing process."

¶ 77. While Bylaw 3.3(b), which governs the scope of an attorney's participation at a peer review hearing, prohibits an attorney from acting in certain capacities, it does not explain in what ways a representative of the affected doctor and a representative of the charging entity participate at a peer review hearing. The scope of each party's activities (and therefore those of each of their representatives) are governed by Bylaw 3.4. Bylaw 3.4 explains that each party has the right to call and

a whole in order to give each of its provisions the meaning intended by the parties."); *Corbin, supra* note 13, § 24.21 at 204 ("[T]he terms of a contract are to be interpreted and their legal effects determined as a whole.").

question witnesses, rebut evidence, and submit a written statement at the close of the hearing. Bylaw § 3.4 provides as follows:

> Each of the parties shall have the right to:
>
> (a) Call and examine witnesses, including expert witnesses.
>
> (b) Introduce exhibits and present relevant evidence.
>
> (c) Question any witness on any matter relevant to the issues.
>
> (d) Impeach any witness.
>
> (e) Rebut any evidence.
>
> (f) Submit a written statement at the close of hearing.
>
> (g) Record the hearing by use of a court reporter or other mutually acceptable means of recording.

¶ 78. The hearing committee is ordinarily composed of 3 to 5 members of the medical staff, with the chairman being the presiding officer.[36] Under certain circumstances a hearing officer may preside over the hearing. The hearing officer may, but need not, be an "attorney-at-law," but must be experienced in conducting hearings.[37]

¶ 79. Bylaw § 3.8 sets forth the rules of procedure and evidence that govern the hearing. According to § 3.8, the "hearing need not be conducted strictly according to rules of law relating to the examination of witnesses or presentation of evidence. Any relevant evidence shall be admissible if, in the judgment of the

---

[36] Bylaw §§ 2.9, 3.2.

[37] Bylaw § 9.2.

presiding officer, it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." The Bylaw further provides that "the presiding officer shall have the power to rule on the admissibility of pieces of evidence."

¶ 80. These enumerated procedures are common to many types of hearings. Some are conducted by and with attorneys licensed to practice law in Wisconsin. Some are not.

¶ 81. As is evident from the bylaws, the expectation is that the peer review hearings may be totally conducted by and with medical staff. The bylaws do not envision that the hearings will require persons knowledgeable in Wisconsin law or procedure. The hearings are not conducted in reliance on any specialized knowledge of the law, to say nothing of Wisconsin law or procedure, particularly given that the peer review hearing is explicitly described as not being a "judicial forum."

¶ 82. In fact, laypersons routinely perform the activities set forth in the bylaws for the peer review hearings in other contexts, such as governmental administrative hearings. For instance, non-attorneys may serve in a representative capacity in worker's compensation cases. Wisconsin Admin. Code § DWD 80.06 provides that "parties to the controversy . . . may appear in person or by an attorney or agent." The licensing procedure established in § DWD 80.20 by the Department of Workforce Development does not require that an individual appearing before the Department be an attorney.[38]

---

[38] Wisconsin Stat. § 102.17(1)(c) governs the licensing of non-attorneys who appear in worker's compensation hearings. It provides:

¶ 83. The rules governing the procedure in a worker's compensation hearing are substantially similar to those of the hospital peer review hearing. Wisconsin Admin. Code § 80.12 provides that "[t]he rules of practice before the department shall be such as to secure the facts in as direct and simple a manner as possible."[39] Furthermore, the examiner in a worker's compensation hearing "may limit testimony to only those matters which are disputed"[40] and "may not allow into the record, either on direct or cross-examination, redundant, irrelevant or repetitive testimony."[41]

¶ 84. In other words, at a worker's compensation hearing, laypersons are authorized to present and rebut evidence, cross-examine and impeach witnesses; the proceedings are recorded.[42] There seems to be little if any difference between the procedures in a worker's compensation hearing and in a peer review hearing.

Any party shall have the right to be present at any hearing, in person or by attorney or any other agent, and to present such testimony as may be pertinent to the controversy before the department. No person, firm, or corporation, other than an attorney at law who is licensed to practice law in the state, may appear on behalf of any party in interest before the department or any member or employee of the department assigned to conduct any hearing, investigation, or inquiry relative to a claim for compensation or benefits under this chapter, unless the person is 18 years of age or older, does not have an arrest or conviction record, subject to ss. 111.321, 111.322 and 111.335, is otherwise qualified, and has obtained from the department a license with authorization to appear in matters or proceedings before the department. Except as provided under pars. (cm) and (cr), the license shall be issued by the department under rules promulgated by the department.

[39] Wis. Admin. Code § DWD 80.12(1)(a) (Nov. 2002).

[40] Wis. Admin. Code § DWD 80.12(1)(b) (Nov. 2002).

[41] Wis. Admin. Code § DWD 80.12(1)(c) (Nov. 2002).

[42] *See* Wis. Admin. Code § DWD 80.14(1) (Nov. 2002).

Similarly, a person who is not a Wisconsin licensed attorney may represent a person in an unemployment compensation proceeding[43] and perform activities similar to those performed by a representative in a peer review hearing.[44]

¶ 85. In considering whether the parties intended that a person who is not a licensed attorney in Wisconsin may appear as a representative for an affected doctor, I apply Rule 6. I read the bylaws as a whole and give effect to the bylaws' characterization of the venue as a non-judicial forum and the bylaws' preclusion of an attorney from acting as an attorney at the peer review hearing. I also give effect to the bylaws' statement of the rights of the parties and the rules of procedure. In discerning the parties' intent, I look at whether a person who is not a licensed Wisconsin lawyer can appear to perform similar functions in governmental administrative hearings. On the basis of all of these

---

[43] Unemployment insurance appeals also do not require attorney representation. Wisconsin Admin. Code § 140.02 (Sept. 2000) provides that:

> Any party may appear on the party's own behalf at any hearing under this chapter or appear with or by a representative. The representative shall be presumed to have full authority to act on behalf of the party, including the authority to file or withdraw an appeal. The representative shall have authority to act on behalf of the party until the party or the representative terminates the representative's authorization and notifies the department that such representation has ended.

The Department of Workforce Development's website further clarifies that a representative need not be an attorney. *See* http://www.dwd.state.wi.us/uibola/BOLA/FAQs/Represcation2.htm.

[44] *See* Wis. Admin. Code § DWD 140.15(1) (Sept. 2000) ("Each party shall be given an opportunity to examine and cross-examine witnesses."); § DWD 140.16(1) (Sept. 2000) (statutory and common law rules of evidence do not apply).

factors, I conclude that the parties did not intend the bylaws to limit representation of an affected doctor by an attorney before the peer review board to an attorney licensed in Wisconsin.

¶ 86. **Rule 7: "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."[45] "[W]here one construction would make a contract unusual and extraordinary while another [construction] equally consistent with the language used would make the contract reasonable, just, and fair, the latter must prevail."[46]**

¶ 87. Although the majority opinion asserts that its interpretation of the bylaws is reasonable, I conclude, for the following reasons, that the majority opinion has adopted an unreasonable interpretation of the bylaws and therefore one that violates the intent of the parties.

A. The majority opinion's determination that its interpretation is reasonable rests on its conclusion that a representative of an affected doctor at a peer review hearing could be expected to focus on legal issues or engage in activities that resemble the practice of law and that therefore the parties intended that the bylaws require a Wisconsin-licensed lawyer. "Focus[ing] on legal issues" and "resembl[ing] the practice of law" are

[45] Restatement (Second) of Contracts, § 203(a) (1981). *See also Williston, supra* note 8, § 32:11, at 453–64; *Corbin, supra* note 13, § 24.22, at 232–48.

[46] *Capital Invs.*, 91 Wis. 2d at 193 (quoting *Bank of Cashton v. LaCrosse County Scandinavian Town Mut. Ins. Co.*, 216 Wis. 513, 257 N.W. 451 (1934)).

vague, broad, undefined phrases. The concept that activities "focusing on legal issues" or "resembling the practice of law" can be performed only by a Wisconsin-licensed lawyer is foreign to our jurisprudence and creates an unworkable rule of law.

B. The majority opinion's determination that its interpretation is reasonable rests on its conclusion that a representative of an affected doctor at a peer review hearing engages in the practice of law and that therefore the parties intended that the bylaws require a Wisconsin-licensed lawyer. Despite its repeated protestations that it need not and does not determine whether representation at a peer review hearing constitutes the practice of law, the majority opinion concludes that such representation does constitute the practice of law.

C. The majority opinion's interpretation of the bylaws renders provisions of the bylaws contradictory and therefore results in a rewriting of the bylaws to make the provisions consistent. Such an interpretation is not reasonable and cannot be the intent of the parties. According to the majority opinion, an attorney must be licensed to practice law in Wisconsin in order to represent an affected doctor at a peer review hearing. But the bylaws allow a staff doctor to represent the charging entity and allow any person of the entity's choosing to represent the charging entity. The bylaws also allow an attorney to represent the charging entity. A doctor may not practice law any more than an attorney not licensed in Wisconsin. Therefore, the majority opinion's interpretation of the bylaws either renders them internally contradictory or rewrites them to read that only a Wisconsin-

44

licensed attorney can represent a doctor or the charging entity at a peer review hearing.

D. The majority opinion's interpretation of the bylaws is unreasonable because it is unfair. It denies Dr. Seitzinger access to the attorney of his choice. Yet the proceeding has very significant consequences to him, and the bylaws allow the charging entity to be represented by anyone it chooses. Such an interpretation is unreasonable and cannot be said to be the intent of the parties, no matter how many times the majority opinion flatly insists that a reasonable person would view them that way.

E. The majority opinion's interpretation is unreasonable because it does not foster the public policy underlying the licensing of lawyers and the prohibition on the unlawful practice of law. The justification for licensing lawyers and the public policy underlying the prohibition on the unauthorized practice of law is to protect consumers of legal services. This policy is not implicated in the hospital bylaws and peer review hearings. Accordingly the majority opinion's interpretation is unreasonable and cannot be said to be the intent of the parties.

A

¶ 88. The majority opinion's conclusion that the bylaws mean that a non-Wisconsin licensed attorney cannot represent Dr. Seitzinger at the peer review hearing rests on the majority opinion's characterization that representation at a peer review hearing "at the very least . . . could be expected to focus on legal is-

sues."[47] Such an interpretation cannot be reasonable and the intent of the parties. The concept that an activity that "focuses on legal issues" or "resembles the practice of law" can be performed only by a Wisconsin-licensed lawyer is foreign to our jurisprudence and creates an unworkable rule of law.

¶ 89. The majority opinion states several times that Mr. Kadar's likely activities would closely "focus on legal issues"[48] or "resemble the practice of law"[49] and that "a layperson must refrain from engaging in any acts that resemble the practice of law."[50] In a similar vein, the majority opinion reasons that because Mr. Kadar *might* provide legal advice at the peer hearing despite the bylaws' limitations on any attorney who represents an affected doctor, a reasonable interpretation of the bylaws is that a non-Wisconsin licensed attorney *cannot represent an affected doctor.*[51]

¶ 90. The record does not disclose the activities a doctor's representative performs, and the majority opinion provides no explanation, justification, or citation of authority for drawing a line between activities that can or cannot be performed by non-Wisconsin licensed attorneys by their resemblance to the practice of law. "Focus[ing] on legal issues" or "resemble[ing] the practice of law" are broad, vague, and undefined phrases that encompass the activities of many professionals who are not licensed attorneys. Such an interpretation can only cause problems in the future.

---

[47] Majority op., ¶ 34.

[48] Majority op., ¶¶ 3, 43.

[49] Majority op., ¶¶ 30, 34

[50] Majority op., ¶ 34.

[51] Majority op., ¶¶ 27–37.

¶ 91. Although the majority opinion relies on *State ex rel. Junior Ass'n of Milwaukee Bar v. Rice,* 236 Wis. 38, 294 N.W.550 (1940), for the notion that an unlicensed person's activities may not "resemble the practice of law,"[52] the *Rice* decision never uses that or any similar phrase. The *Rice* case (and our other cases) speak of activities that *constitute* the practice of law, not those that merely focus on legal issues or resemble the practice of law.[53]

¶ 92. The majority opinion claims that its interpretation of the bylaws is required because another interpretation "might permit attorneys unlicensed in the state or non-attorneys to violate Wis. Stat. § 757.30."[54] What does "might" permit unlicensed persons to engage in the practice of law mean? Why is it reasonable to conclude that the *possibility* that a person might engage in providing legal services while he or she is providing non-legal services is a sufficient basis to interpret the hospital bylaws as barring a non-Wisconsin licensed attorney from appearing at a peer review hearing? Many professionals who are not Wisconsin-licensed attorneys engage, as I explain later, in a myriad of diverse acts that focus on legal issues, resemble the practice of law, or put the professional in a position in which he or she "might" engage in the practice of law. Our cases do not take the approach that an activity's merely resembling the practice of law or focusing on legal issues bars a non-Wisconsin licensed lawyer from engaging in it. Rather, our cases analyze

---

[52] Majority op., ¶ 34.

[53] *See, e.g., Lathrop v. Donohue,* 10 Wis. 2d 230, 248, 102 N.W.2d 404 (1960); *aff'd,* 367 U.S. 820 (1961).

[54] Majority op., ¶ 27.

each activity challenged and determine whether that activity does or does not constitute the practice of law.[55]

¶ 93. I therefore conclude that the majority opinion's interpretation is contrary to the intent of the parties and that no reasonable person would understand the words "legal counsel" in the Bylaws to mean an attorney licensed to practice law in Wisconsin.

B

¶ 94. The majority opinion is internally contradictory. Despite its repeated protestations that it need not and does not determine whether "such representation [at a peer review hearing] would constitute the practice of law,"[56] the only possible reading of the opinion is that representation at the peer review hearing constitutes the practice of law.

¶ 95. The majority opinion explicitly states that to construe the bylaws to refer to a non-Wisconsin licensed attorney "might permit attorneys unlicensed in the state" to engage in the unauthorized practice of law.[57] What does this sentence mean if it doesn't mean that an appearance at a peer review hearing is the practice of law? If there is any doubt about the meaning of the sentence, we need only examine the section of the majority opinion devoted to discussing the interpretation of the bylaws.[58]

---

[55] *See, e.g., State ex rel. Junior Ass'n of Milwaukee Bar v. Rice,* 236 Wis. 38, 53 294 N.W.550 (1940).

[56] Majority op., ¶¶ 3, 36, 39, 41, 43.

[57] Majority op., ¶ 27.

[58] Majority op., ¶¶ 27–41.

¶ 96. Eight of the 15 paragraphs of the majority opinion,[59] that is, approximately two-thirds of the "total ink" the majority opinion spills on the substantive analysis of the bylaws, address cases defining the unauthorized practice of law. If the majority opinion does not conclude that Mr. Kadar's appearance is the practice of law requiring a Wisconsin license, why does the majority opinion engage in this lengthy discussion? If the majority opinion does not conclude that Mr. Kadar's appearance is the practice of law requiring a Wisconsin license, what is the basis for the majority opinion's interpretation that the bylaws were intended to bar an out-of-state attorney from appearing at the peer review hearing?

¶ 97. I am sympathetic with the majority's attempt to avoid deciding what constitutes the practice of law and the unauthorized practice of law. Defining these terms has generated a great deal of discussion among lawyers, judges, and non-lawyers for many years. In the last year or so, both the American Bar Association and the State Bar of Wisconsin have independently abandoned their respective attempts to reach an acceptable definition or approach to defining the practice of law or the unauthorized practice of law.

¶ 98. As the majority opinion points out, the State Bar of Wisconsin has petitioned our court to appoint a committee to study this area of the law.[60] Numerous lawyers, representatives of consumer groups, non-lawyers, and trade association representatives appeared before this court at its hearing on the Bar's petition. These persons carefully explained (and gave many examples) how professionals engage in activities

---

[59] Majority op., ¶¶ 28–35.

[60] Majority op., ¶ 41 n.15.

on a daily basis that sometimes have a legal focus and resemble the practice of law. To name a few such professionals: financial advisers, investment advisers, accountants, bankers, mediators, arbitrators, trust officers, engineers, geologists, realtors, paralegals, and land planners. That many professionals engage in activities that focus on legal issues or resemble the practice of law presents one of the key difficulties in trying to define the practice of law and the unauthorized practice of law.

¶ 99. Because the majority opinion contradicts itself by addressing an issue it denies addressing, I conclude that the majority opinion's interpretation of the bylaws is contrary to the intent of the parties and that no reasonable person would understand that the words "legal counsel" in the Bylaws mean an attorney licensed to practice law in Wisconsin.

C

¶ 100. The majority opinion's interpretation renders the bylaws internally contradictory. Such an interpretation cannot be reasonable and intended by the parties.

¶ 101. Why is it reasonable to interpret the bylaws as not allowing an out-of-state attorney to represent an affected doctor when the bylaws allow a staff doctor to represent an affected doctor at the hearing and allow any person of its choosing to represent the charging entity? A non-lawyer, as well as an out-of-state lawyer, cannot engage in the practice of law in Wisconsin. Carried to its logical conclusion, the majority opinion bars any person who is not a Wisconsin-licensed attorney from representing an affected doctor or the charging entity at a peer review hearing. Indeed, the

majority opinion states that interpreting the bylaws as allowing a non-Wisconsin licensed attorney to appear "might permit . . . non-attorneys" to engage in the unauthorized practice of law.[61]

¶ 102. If it is reasonable to interpret representation of an affected doctor at a peer review hearing as an activity in which laypersons cannot engage, as the majority opinion does, then it is reasonable for the majority opinion to render the hospital's authorization of its staff doctors to provide representation at these hearings to either the affected doctor or to the charging entity an illegal authorization of the staff doctors and other non-lawyers to engage in the practice of law.[62] A reasonable person would not think that the same activities that can be performed by a doctor require an attorney licensed in the State of Wisconsin. Why is it

---

[61] Majority op., ¶ 27.

[62] An interpretation of a contract that could produce unlawful results is not reasonable. Restatement (Second) of Contracts, § 203(a)(1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). *See also Williston, supra* note 8, § 32:11 at 453 ("Consonant with the principle that all parts of a contract be given effect where possible, an interpretation which renders a contract lawful is preferred to those which render it unlawful.").

*See also Glendale Prof'l Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 102, 264 N.W.2d 594 (1978) ("[A] contract provision interpreted to permit an employee to violate an ordinance requiring him to live within the city was illegal."); *WERC v. Teamsters Local No. 563,* 75 Wis. 2d 602, 612–13, 250 N.W.2d 696 (1977) ("Just as a contractual provision to directly violate the law is void, a contractual provision conferring upon a third party the power to interpret the contract in such a manner that a violation will occur is also void.").

reasonable for the majority opinion to adopt an interpretation of one provision of the bylaws that renders other provisions invalid and changes the procedures set forth in the bylaws? My answer is that such an interpretation is not intended by the parties and that no reasonable person would understand that the words "legal counsel" in the bylaws mean an attorney licensed to practice law in Wisconsin.

## D

¶ 103. The majority opinion's interpretation unreasonably denies to Dr. Seitzinger the right to a representative of his choice under the circumstances of the case. It limits his right of representation, yet allows the charging entity to be represented by anyone it chooses. This case is very important to Dr. Seitzinger. His livelihood and professional reputation are in jeopardy at the peer review hearing. His choice of Mr. Kadar falls within the text of the bylaws and within the well-worn rules of contract interpretation. Accordingly, the majority opinion's interpretation of the hospital bylaws is contrary to the intent of the parties and no reasonable person would understand that the words "legal counsel" in the Bylaws mean an attorney licensed to practice law in Wisconsin.

## E

¶ 104. The majority opinion's interpretation is unreasonable because it does not foster the public policy underlying the licensing of lawyers and the prohibition on the unlawful practice of law. The policy consideration underlying licensure and the prohibition on unauthorized practice is the protection of consumers of legal services from harm that might be visited upon

them by persons presumably untrained and incompetent in the law who will provide inadequate or unethical representation.[63]

¶ 105. This public policy is not implicated in interpreting the hospital bylaws in favor of Dr. Seitzinger. Here, the activities of a representative at the hearings are limited by the bylaws: the forum is non-judicial and the representative's activities are restricted to non-attorney functions. According to the bylaws, the hospital will restrain an attorney from engaging in the practice of law.

¶ 106. Under these circumstances, interpreting the bylaws to require a licensed Wisconsin lawyer does not protect Dr. Seitzinger as a consumer of legal advice. The licensing of lawyers and the prohibition on the unauthorized practice of law do not exist to protect the economic livelihood of lawyers. Accordingly, I conclude that the majority opinion's interpretation of the bylaws is contrary to the intent of the parties and that no reasonable person would understand that the words "legal counsel" in the Bylaws mean an attorney licensed to practice law in Wisconsin.[64]

---

[63] *See* majority op., ¶ 29, citing *Jadair Inc. v. U.S. Fire Ins. Co.*, 209 Wis. 2d 187, 201–02, 562 N.W.2d 401 (1997) (primary purpose of statute preventing the unauthorized practice of law is to protect against inadequate or unethical representation); ¶ 31, citing *State ex rel. Reynolds v. Dinger*, 14 Wis. 2d 193, 109 N.W.2d 685 (1961) (allowing real estate brokers to complete conveyancing forms because this practice does not pose a danger to the public).

[64] The majority opinion argues that Mr. Kadar cannot be admitted pro hac vice under SCR 10.03(4) and declines to construct an interpretation or create an exception that would allow for his admission for the hearing. Majority op., ¶ 41. It makes little sense that Wisconsin courts can and do allow pro

¶ 107. In sum, the majority opinion follows its own approach to contract interpretation in this case rather than heeding the general rules of contract interpretation that have long guided Wisconsin courts. As a result, the majority opinion opts for an unreasonable interpretation, rather than for a reasonable interpretation, of the bylaws.

¶ 108. For the reasons set forth, I dissent.

¶ 109. I am authorized to state that Justices ANN WALSH BRADLEY and DAVID T. PROSSER join this dissent.

---

hac vice admissions of out-of-state lawyers, including those appearing before this court, but cannot authorize the appearance of an out-of-state lawyer at a peer review hearing. If the rule is the problem, then the rule should be changed. Furthermore, at least one jurisdiction has recognized that a lawyer can be admitted pro hac vice even if not expected to appear in court. *See Permission to Practice,* Connecticut Law Tribune, Feb. 23, 2004, at 8.