MILLER (Patricia) now Steiner, Appellant, v. MILLER (Roger), Respondent.

*No. 450. Argued March 5, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 626.)

436

For the appellant there were briefs by *Paul C. Gartzke* and *Bieberstein, Cooper, Bruemmer, Gartzke & Hanson,* all of Madison, and oral argument by *Paul C. Gartzke.*

For the respondent there was a brief by *William D. Harvey* and *Wheeler, VanSickle & Anderson,* all of Madison, and oral argument by *Mr. Harvey.*

BEILFUSS, J.    We deem the issues to be:

1. Is the respondent estopped from asserting that his duty of support as to each of his sons terminated when each son attains the age of eighteen, the legal age

of majority, in view of the stipulation entered into between the parties?

2. Did the trial court abuse its discretion in refusing to require the respondent to pay the college or university expenses of his sons, and in refusing to increase the amount of monthly support?

3. Is sec. 247.25, Stats., unconstitutional as violative of due process insofar as it requires consideration of the earning capacity of a parent's spouse when child support payments are modified?

4. Did the trial court abuse its discretion in ordering the appellant to contribute toward respondent's attorney's fees?

The appellant, Mrs. Steiner, contends the respondent is estopped from claiming he has no obligation to support his children after they become eighteen years old.

Sec. 247.24 (1), Stats., provides in part:

"**Judgment; care and custody, etc., of minor children.** (1) In rendering a judgment of . . . divorce . . . the court may make such further provisions therein as it deems just and reasonable concerning the care, custody, maintenance and education of the minor children of the parties. . . ."

It is well established that, divorce being a statutory proceeding, the authority of the court to order support is limited to the minor children of the parties.[1] Since in Wisconsin a person loses his status as a minor upon attaining the age of eighteen,[2] the respondent contends that he cannot be compelled to make support payments for his sons after they reach eighteen.

Mrs. Steiner places primary reliance upon *Bliwas v. Bliwas* (1970), 47 Wis. 2d 635, 178 N. W. 2d 35, where

[1] *Beberfall v. Beberfall* (1969), 44 Wis. 2d 540, 543, 171 N. W. 2d 390; *O'Neill v. O'Neill* (1962), 17 Wis. 2d 406, 408, 117 N. W. 2d 267; *Halmu v. Halmu* (1945), 247 Wis. 124, 131, 19 N. W. 2d 317; *Boehler v. Boehler* (1905), 125 Wis. 627, 630, 104 N. W. 840.

[2] Sec. 990.01 (20), Stats.

this court affirmed the general rule, but stated at pages 639, 640:

". . . we hold that the enforcement of a family court order, which would not be enforceable without a prior stipulation of the parties that it be made part of the decree, rests not so much in the enforcement of a contractual obligation or even extension of jurisdiction of the court, as it does in recognizing that a person who agrees that something be included in a family court order, especially where he receives a benefit for so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do. . . ."

The court concluded that the father in *Bliwas*, who had stipulated that he would contribute to his son's college education beyond his twenty-first birthday, was estopped from challenging the court's authority to enter a judgment ordering him so to do.

Based on *Bliwas*, Mrs. Steiner contends that Professor Miller is estopped from denying his duty to continue support payments to age twenty-one.

The stipulation entered into between the parties provided that Professor Miller, from June 12, 1967, to July 1, 1968, would pay $110 per month per child and thereafter $142 per month for each child "until further order of the court."[3]

The judgment provided that the written stipulation as amended in open court be approved as to all its provisions; and then ordered support money payments in the same amounts and manner as provided for in the stipulation. Mrs. Steiner contends that the intent of the stipulation is that Professor Miller should make support payments until the boys become twenty-one years old.

---

[3] The stipulation also provided for payment of medical and dental expenses and maintenance of life insurance during the minority of the children. Those provisions are not material to the issues here.

It should be noted that the cases from other jurisdictions interpreting stipulations and judgments, cited by the parties, are inapposite because in each of them the stipulation or judgment specifically required support payments to be made until "majority," during "infancy," until age twenty-two, etc.[4] In this case, both the stipulation and the judgment incorporating it specify only that support payments shall be made "until the further order of the court." The term "minor" is used only with respect to medical and dental expenses, health insurance and life insurance provisions, none of which are in dispute in this case.

Counsel on behalf of Mrs. Steiner argues that the testimony received at the hearing on the petition reveals that the parties intended that support payments continue for each child to age twenty-one.[5] No ambiguity appears on the face of the stipulation, therefore resort to the subjective intents of the parties at the time of the stipulation is unnecessary.[6] As stated in *Marion v. Orson's Camera Centers, Inc.* (1966), 29 Wis. 2d 339, 345, 138 N. W. 2d 733, quoting from *Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin* (1897), 95 Wis. 111, 115, 69 N. W. 354:

[4] *Monticello v. Monticello* (1974), 271 Md. 168, 315 Atl. 2d 520; *Ruhsam v. Ruhsam* (1974), 110 Ariz. 326, 518 Pac. 2d 576, rehearing denied, 110 Ariz. 426, 520 Pac. 2d 298; *Whitt v. Whitt* (1973), 490 S. W. 2d 159; *Jones v. Jones* (1973), 503 S. W. 2d 924, certiorari denied 1974.

[5] Mrs. Steiner testified it was her understanding of the stipulation that support was to continue during the minority of the boys and that age was twenty-one. Professor Miller testified that he understood he was to support the children and provide for their health needs until they reached the age specified by law or they became emancipated.

[6] *Stack Construction Co. v. Chenenoff* (1965), 28 Wis. 2d 282, 287, 137 N. W. 2d 66; *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 574, 18 N. W. 2d 468.

" '. . . the office of judicial construction is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use.' "

Both parties were represented by counsel during negotiations prior to the stipulation. Their intent, as expressed in the stipulation, is that payments are to be "until the further order of the court." Barring a stipulation to the contrary, the court cannot order support payments beyond the age of majority,[7] therefore Professor Miller was under no obligation to continue making such payments. Because he agreed to nothing more in the stipulation, he is not estopped from asserting so.

Mrs. Steiner contends the trial court abused its discretion in refusing to require the respondent to pay the college or university expenses of his sons, and in refusing to increase the amount of monthly support.

The authority of the court to modify the judgment of divorce with respect to the amount of support payments is derived from sec. 247.25, Stats.:

"**Revision of judgment.** The court may from time to time afterwards, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment concerning the care, custody, maintenance and education of any of the children, and make a new judgment concerning the same as the circumstances of the parents and the benefit of the children shall require. Any change in child support because of alleged change in circumstances shall take into consideration the earning capacity of each parent and the parent's spouse, if any."

An increase in support payments will be granted only where the party seeking such increase demonstrates that there has been a substantial or material change in the

---

[7] See cases cited in footnote 1.

circumstances upon which the existing payments were predicated, and that such an increase is justified.[8] The aging of the children,[9] the increased cost of living,[10] the ability of the noncustodial parent to pay,[11] the marital status of the parents,[12] and the financial status of the parents and their spouses,[13] are among the relevant factors to be considered in determining whether a material change in the circumstances has occurred.

In this case, an abundance of evidence was introduced in support of, and in opposition to, Mrs. Steiner's petition that the judgment be modified to require Professor Miller to make larger support payments and to pay the reasonable college and university expenses of his sons.

Mrs. Steiner testified that she has no employment, but produced tax records indicating that her husband's adjusted gross income for 1972 was $44,587. Mrs. Steiner owns jointly with her husband a home which she valued at $80,000 and which is subject to a mortgage of $15,000. She introduced an exhibit prepared by her and Professor Steiner breaking down the monthly expenses for each son. The listed total monthly expenses for Gregory, who attends Michigan State University, exclusive of college expenses, was $175. For Matthew and Anthony, both of whom were living at home, the monthly expenses

[8] *Krause v. Krause* (1973), 58 Wis. 2d 499, 508, 509, 206 N. W. 2d 589; *Thies v. MacDonald* (1971), 51 Wis. 2d 296, 301, 187 N. W. 2d 186; *Foregger v. Foregger* (1970), 48 Wis. 2d 512, 522, 180 N. W. 2d 578; *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 447, 124 N. W. 2d 581.

[9] *Chandler v. Chandler* (1964), 25 Wis. 2d 587, 592, 131 N. W. 2d 336; *Kritzik v. Kritzik, supra,* page 447.

[10] *Foregger v. Foregger, supra,* page 522.

[11] *Thies v. MacDonald, supra,* page 303; *Kritzik v. Kritzik, supra,* page 447.

[12] *Thies v. MacDonald, supra,* page 303.

[13] Sec. 247.25, Stats., *supra.*

were $215 and $202 respectively. An element of each son's total monthly expense was $112 for housing. In another exhibit Mrs. Steiner demonstrated her calculations in arriving at this figure. Total household expenses, including electricity, gas, water, insurance, taxes and mortgage interest, were added to a figure representing seven percent of the equity in the home, the theory being that a "cost" of living in the home was the amount the equity could be earning if invested at seven percent. The total housing expenses, on a monthly basis, were divided by six, although there are only five people living there, including Gregory, to accommodate for usage by houseguests. The final figure was thus $112 per person per month.

Mrs. Steiner estimated Gregory's annual college expenses to be $2,430. She also introduced an exhibit demonstrating the inflation in four expense areas between 1969 and 1973: family food, family milk, allowances and school lunches.

She also testified that Professor Steiner has two children by a previous marriage and that he is supporting them in college.

Professor Miller's tax records reveal the joint adjusted gross income of him and his wife in 1972 was $25,451.25. They live with his wife's two children by a prior marriage in a $41,600 home with a $27,000 mortgage. His wife receives $75 per month in support payments for each of her two children. Professor Miller predicted a substantial decline in his 1973 income due to his inability to obtain summer employment as usual.

Professor Miller introduced various economic data demonstrating that the effect of inflation on his income resulted, in real terms, in a net decline of 13 percent since 1968, when the $125 support payments were established. He also testified, however, that it would take $154 in 1973 to have the same spending power as $125 in 1968. He stated that it was not his position that he

could not afford to contribute to the cost of his son's college education and did so by sending funds directly to Gregory.

The trial court placed considerable emphasis on the improved financial status of Mrs. Steiner and her sons. The court stated in its findings:

"By way of summation, it appears from the testimony that the plaintiff and her husband and the children of the parties enjoy a rather affluent and high standard of living which includes tennis clubs, home swimming pool and European trips. The defendant does not enjoy that standard of living in view of the fact as hereinbefore noted, his adjusted annual income including that of his spouse although comfortable, is about half of the plaintiff's family's adjusted gross income. Mrs. Steiner testified that her home may be worth $80,000 and according to Exhibit No. 4 there's a $15,000 mortgage leaving an equity of $65,000 owned jointly by the plaintiff and her husband.

"Mrs. Steiner does not work, but it's evident that she works hard in aiding her husband to accumulate his income and estate by her duties and obligations as a wife of a department chairman to maintain a home befitting the position her husband holds. The Court assumes, therefore, the parties treat the income earned by Professor Steiner as being joint income as evidenced by their tax returns which are on file herein."

In its "Conclusions of Law" the court provided:

". . . The Court further concludes that Mr. Miller, the defendant, has no legal obligation to provide for the college expenses for his son, Gregory, or for his other two sons.

"The Court sincerely hopes, however, that all three boys shall be given an opportunity to pursue a post high school education without financial worry. The consideration of the divorced parents, of course, in this regard should be the same as any other parent would give under normal circumstances including consideration of the obligation of the child to contribute towards his education expenses and to cooperate with the parents in the min-

imizing of said expenses should it be necessary. The plaintiff and her husband have no real burden or hardships in contributing towards the education of Gregory and any of the other two boys. They can afford it without any contribution from the defendant. Any contribution by Professor Miller, the Court believes, will work a hardship on him in light of the fact that notwithstanding the support payments he gets for his wife's children, their expense of living in his home materially increases the financial burden on the defendant Miller. The Court believes that his contribution towards the expenses of his children for a college education is merely discretionary.

"The Court concludes that the support for the other two children should remain at $125 per month. This, of course, does not fully pay for the support of those children, and is a mere contribution to their prorata expenses while living in the Steiner household. This is justified in view of the fact that the plaintiff is much better able to support those children than the defendant is since her household income is double that of the defendant. . . ."

Mrs. Steiner contends on appeal that she has made an adequate showing of material change, including the advanced ages of her sons and increased cost. She also contends that Professor Miller has adequate earning capacity to meet a higher support obligation.

Professor Miller, on the other hand, asserts no substantial change justifying an increased support obligation has been demonstrated, primarily because the increased costs are allegedly due to the boys' newly acquired affluent life-style. He also asserts that the relative financial conditions of the parties militate against increased support payments.

It is discretionary with the trial court as to whether a divorce judgment should be modified with respect to support payments, and hence the court's determination will not be reversed except in the case of an abuse of

discretion.[14] When the determination is based on findings of fact, those facts will not be upset unless contrary to the great weight of the evidence.[15]

As to the discretionary aspect of the determination, several factors should be considered. With respect to the petition that Professor Miller pay college expenses, it should be noted that the trial court held, and we agree, that the duty to make support payments does not extend beyond age eighteen. In light of that fact it is apparent that little or no college expenses could be required of Mr. Miller.

It should also be noted that Professor Miller has made contributions in the amount of about $1,500 directly to his son for college expenses and indicates he intends to continue to do so on a voluntary basis as best he can. Furthermore, in light of Mrs. Steiner's improved financial condition, in light of the comparative earning capacities of Professors Steiner and Miller, a factor made relevant by sec. 247.25, Stats., and in light of the fact that Professor Steiner does not object to supporting the boys, we conclude that the trial court did not abuse its discretion in refusing to increase Professor Miller's support obligation.

Mrs. Steiner next contends that sec. 247.25, Stats., is unconstitutional insofar as it provides, "Any change in child support because of alleged change in circumstances shall take into consideration the earning capacity of each parent and the parent's spouse, if any."

Specifically, in reliance on *Tot v. United States* (1943), 319 U. S. 463, 63 Sup. Ct. 1241, 87 L. Ed. 1519, and *Janesville v. Carpenter* (1890), 77 Wis. 288, 46 N. W. 128, she argues that the statute is violative of due process

[14] *Krause v. Krause, supra*, page 508; *Thies v. MacDonald, supra*, pages 303, 304; *Chandler v. Chandler, supra*, page 590.

[15] *Thies v. MacDonald, supra*, page 303; *Kritzik v. Kritzik, supra*, page 446.

in that it creates an irrational presumption that a custodial parent's spouse will support stepchildren.

In *Tot,* at page 464, the court held unconstitutional as violative of due process, the statutory presumption created by 15 USCA, p. 503, sec. 902 (f) :

> " 'It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act.' "

The basis for the court's decision was that there was "no rational connection between the fact proved and the ultimate fact presumed." *Tot, supra,* page 467. *See also, Janesville v. Carpenter, supra.*

We believe this contention must fail for two reasons.

First, it is clear that the statute creates no presumption whatsoever. The statute only requires that the court consider the earning capacity of the parties and their spouses. Once having considered such information the court is under no compulsion to find one way or another. According to McCormick ". . . a presumption is a standardized practice, under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts." McCormick, *Evidence* (2d ed. 1972), p. 803, sec. 342.

Secondly, Mrs. Steiner has failed to demonstrate how she is deprived of "life, liberty or property" by application of the statute. Surely she has no property interest in the possibility that the court might increase the support payments. "Divorce is a statutory proceeding, and the rights . . . of the parties are limited to those provided by the statutes." *Hutschenreuter v. Hutschenreuter* (1964), 23 Wis. 2d 318, 320, 127 N. W. 2d 47.

It is our opinion that the statute does not deny due process by creating an unconstitutional presumption.

In its findings of fact, the trial court stated: "The court assumes, therefore, that the parties treat the income earned by Professor Steiner as being joint income as evidenced by their tax returns which are filed herein."

As Mrs. Steiner correctly points out, the filing of a joint tax return does not operate as an assignment of income. *Estate of Trecker* (1974), 62 Wis. 2d 446, 450, 215 N. W. 2d 450. However, it is clear that the filing of the joint return was not the basis of the court's finding, but was merely reflective of such finding. The court, in the preceding sentence, based its finding on the division of duties and obligations of the parents, which is amply demonstrated in the record.

The trial court ordered Mrs. Steiner to contribute $500 towards Professor Miller's attorney's fees in litigating the issues arising from her petition. She contends this constitutes an abuse of discretion. We agree.

The authority to award attorney's fees to a party to a divorce action is found in sec. 247.23, Stats. Prior to a legislative act of 1971, this authority was limited to require the husband to pay such sums as the court should determine necessary or proper. By ch. 220, Laws of 1971, the statute has been amended to provide the court may order either party to pay to the other such sums as the court in its discretion shall deem just and reasonable in light of all the circumstances.[16] Assuming the trial court had statutory authority to order the wife to contribute to her former husband's attorney's fees in the

---

[16] Sec. 22 of ch. 220, Laws of 1971, provides that the provisions of ch. 220 shall apply to all actions wherein the judgment was rendered or granted after the effective date of ch. 220. The effective date was April 12, 1972, long after the rendition of the judgment in this case. We deem it not necessary to determine whether the section applied to the attempt to amend the judgment in this case.

collateral procedure, we are of the opinion it was an abuse of discretion to do so.

True, Mrs. Steiner is a joint owner of a substantial home. However all but a very minor portion of the funds necessary to acquire it come from her present husband, Professor Steiner. Further, Mrs. Steiner has no present earnings of her own with which to pay this attorney's fee. Professor Steiner should not be required to pay this fee nor should Mrs. Steiner be required to forego the support money ordered for Mr. Miller's two minor sons as means of paying a part of the respondent's attorney's fees.

The trial court also stated in its findings that it believed "that the plaintiff's petition was without merit and unfounded which caused the defendant to incur unnecessary legal fees and expenses which justifies obligating the plaintiff and her husband, who actively aided and abetted her in these proceedings, to contribute to the defendant's legal fees."

From our review of the record and briefs of counsel, we cannot agree the issues raised were frivolous or without merit and unfounded. Although the issues have been resolved against Mrs. Steiner, we conclude they were substantial, not frivolous, issues both as to law and fact and that she brought her petition in good faith. Under these and the other circumstances of the parties, we believe an award to the husband of a part of his attorney's fees was not warranted and, as such, was an abuse of discretion.

*By the Court.*—The order is amended to strike the provision for attorney's fees and, as amended, affirmed. No appeal costs to be taxed.

WILKIE, C. J., and DAY, J., took no part.