COURT OF APPEALS
DECISION
DATED AND FILED

May 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP699**

Cir. Ct. No. 2021FA731

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE MARRIAGE OF:

KHIDER A.K. ELNIMEIRY,

PETITIONER-RESPONDENT,

V.

AMAL BENSHILI,

RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Reversed and cause remanded with directions*.

Before Kloppenburg, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Amal Benshili appeals a circuit court order granting Khider Elnimeiry's motion to modify child support and denying Benshili's motion to hold Elnimeiry in contempt for failing to pay child support. We conclude that because Elnimeiry failed to show a substantial change in circumstances, the court erroneously exercised its discretion in modifying Elnimeiry's child support obligation.   We further conclude that the court erroneously exercised its discretion in denying Benshili's contempt motion because, in deciding the contempt motion, the court appears to have relied on its erroneous decision to grant Elnimeiry's motion to modify child support and on seemingly contradictory findings.   Accordingly, we reverse and remand with directions that the court enter an order denying Elnimeiry's motion to modify child support and properly exercise its discretion in determining whether Elnimeiry is in contempt and, if so, whether sanctions are warranted.

## BACKGROUND

¶2     Elnimeiry and Benshili were married in 2015 and have two minor children.   Following their divorce in 2023, Elnimeiry and Benshili share placement of the children.  At the time of their divorce, Elnimeiry was a physician and Benshili, a teacher.

¶3     During the divorce proceedings, the circuit court held a trial to address child support, specifically, to determine Elnimeiry's gross monthly income.  Although Elnimeiry presented evidence to show that his ability to work was limited because he has attention-deficit/hyperactivity disorder (ADHD) and anxiety, the court found that he was capable of working full time and imputed an

income to him of $130,000. Pursuant to the divorce judgment, Elnimeiry was ordered to pay $1,261 in monthly child support.[1]

¶4 Less than two months after the trial, Elnimeiry filed a "Motion for Relief, Stay Order, Reopen Judgment" pursuant to WIS. STAT. § 806.07(1)(g) (2023-24)[2] and a motion to modify child support. *Elnimeiry v. Benshili*, Nos. 2023AP528 and 2023AP768, unpublished slip op., ¶¶19, 24 (WI App Mar. 7, 2024). Elnimeiry argued that there was new evidence showing that the income imputed to him based on his earning capacity was too high. *Id.*, ¶20. The circuit court denied Elnimeiry's motion to modify child support and described most of the evidence that Elnimeiry presented as "a rehash" of that presented at trial. *Id.*, ¶23. However, the court granted Elnimeiry's motion for relief from the divorce judgment, determining that Elnimeiry presented new evidence that warranted a revised finding that Elnimeiry could work 20 hours per week rather than full time, and the court reduced Elnimeiry's monthly child support payments to $630 for three months to give him time to find employment. *Id.*, ¶¶24-25. The court ordered that following those three months, Elnimeiry would be required to pay $1,261 in monthly child support as originally ordered. *Id.*, ¶25. The court's finding that Elnimeiry could pay this amount was based on the testimony of Elnimeiry's own vocational expert at trial that Elnimeiry could find a half-time job paying $145 per hour, or approximately $150,000 per year, and Elnimeiry presented no new evidence during the proceedings on his modification motion regarding his earning capacity when he works 20 hours per week. *Id.*, ¶33-34.

---

[1] The circuit court determined during the divorce proceedings that Benshili's income was $2,616 per month, or $31,392 per year.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

3

¶5      Elnimeiry appealed, challenging the circuit court's judgment determining child support and the subsequent denial of his motion to modify child support. *Id.*, ¶¶1, 27. He argued that the court erred in determining that his earning capacity was $130,000. *See id.*, ¶¶1, 33. Specifically, Elnimeiry argued, among other things, that in imputing this income to him, the court "ignore[d] the fact that he can work only 20 hours per week" and "ignore[d] that he had applied to over 30 jobs without receiving any offers." *Id.*, ¶¶34-35. We rejected Elnimeiry's arguments and affirmed. *Id.*, ¶¶30, 37.

¶6      Following our opinion in that appeal, the Wisconsin Child Support Agency ("the Agency") and Benshili each moved for a finding of contempt against Elnimeiry based on Elnimeiry's failure to pay child support as ordered.[3] In July 2024, Elnimeiry again moved to modify his $1,261 monthly child support payments.

¶7      The circuit court held an evidentiary hearing on the motions in January 2025, at which both Elnimeiry and Benshili testified.[4] Elnimeiry also called as witnesses David Hansen, a certified public accountant who prepared Elnimeiry's taxes in 2022 and 2023, and Paul Breen, who had worked with Elnimeiry as the president and chief executive officer of a company that recruits physicians for hospitals, clinics, and medical facilities.

---

[3] Because the Agency is not a party to this appeal and the circuit court denied both contempt motions on the same ground, in the remainder of this opinion we refer only to Benshili's motion.

[4] The motions were initially heard by a family court commissioner, and then by the circuit court after Elnimeiry sought de novo review.

¶8  Elnimeiry's testimony included the following.  After passing the medical licensing exam in 2019, he was employed as a physician in Edgerton from June to October 2020, when he was terminated and had his clinic privileges revoked.  At the time of the hearing, he was working as a telehealth doctor, providing video and phone consults, for roughly 20 hours per week.  He could increase the hours that he was available for telehealth consults, but doing so would interfere with his childcare obligations.  He cannot work full time because he has ADHD, anxiety, and sleep apnea.  He had been searching for better paying full-time and part-time jobs during the two years since the divorce judgment.  For nearly all of the two years since the divorce was finalized, he did not pay the $1,261 per month ordered by the circuit court.  He had instead been paying Benshili $300 each month in child support, with the exception of a few months in which he paid more.  In 2020, he cosigned on a bank loan for a vehicle purchased for his father, and Elnimeiry pays $580 per month for the loan, which, according to Elnimeiry, was to help repay his father for money that his father had loaned Elnimeiry for medical school.

¶9  Benshili's testimony included the following.  During her marriage to Elnimeiry, the two never discussed, nor did she observe symptoms of, Elnimeiry's ADHD or anxiety, and she first became aware of these diagnoses during the divorce trial.  During the marriage Elnimeiry was a hard worker and had three jobs.  Beginning in 2000, Elnimeiry repeatedly told Benshili that if she did not give him full custody of the children, he would not pay her any child support.  At the time of the hearing on Elnimeiry's latest modification motion, Benshili's net monthly income without child support was approximately $3,000, and she was unable to meet the children's expenses with child support of $300 per month.

¶10 Hansen testified that Elnimeiry's gross annual income was approximately $66,500. Breen testified that he had worked with Elnimeiry from 2020 to 2023 to help Elnimeiry find employment as a full-time family physician in the Dane County area, but that Elnimeiry was not able to obtain any such employment. Breen also testified that he did not believe that Elnimeiry would be able to find a position that pays $130,000 per year. That belief was based on the fact that Elnimeiry had been terminated from his previous job in Edgerton and had his clinic privileges revoked, and because of gaps in Elnimeiry's employment. Breen further testified that he did not believe that he would have been able to get Elnimeiry a better paying job at the time of the hearing, and that once doctors begin telework, they generally continue to work in that field.

¶11 The circuit court granted Elnimeiry's motion to modify child support and denied Benshili's motion for contempt. The court determined that there was a substantial change in circumstances that justified lowering Elnimeiry's monthly child support obligation. The court also imputed Elnimeiry's gross income to be $6,400 per month, or $76,800 annually, on the basis that Elnimeiry was not working as much as he could, and that his failure to work more hours was intentional, voluntary, and unreasonable. The court lowered Elnimeiry's monthly child support obligation from $1,261 to $497 and ordered Elnimeiry to pay an additional $100 each month toward child support arrears. Benshili appeals.

## DISCUSSION

¶12 Benshili argues that the circuit court erroneously exercised its discretion when it granted Elnimeiry's motion to modify child support and when it denied the Benshili's contempt motion. We conclude that the court erroneously exercised its discretion in both respects.

6

### I. *Child Support Modification*

¶13 Benshili contends that there was no substantial change in circumstances permitting a modification of child support and that, instead, the circuit court improperly retried the issue of what Elnimeiry's imputed income should be.

¶14 A circuit court may modify child support only if it finds "a substantial change in circumstances." WIS. STAT. § 767.59(1f); *see also* ***Miller v. Miller***, 67 Wis. 2d 435, 442-43, 227 N.W.2d 626 (1975) (stating that the party moving to modify child support must "demonstrate[] that there has been a substantial or material change in the circumstances upon which the existing payments were predicated"); ***Jalovec v. Jalovec***, 2007 WI App 206, ¶24, 305 Wis. 2d 467, 739 N.W.2d 834 ("One shorthand definition for a substantial change in circumstances is that it is some unforeseen event which occurs after [child support has been set].").  A circuit court's "power to modify is not the power to grant a new trial or to re-try issues determined in the original judgment, but only to adapt the decree to some distinct and definite change in the financial circumstances of the parties or children." ***Beaudoin v. Beaudoin***, 2001 WI App 42, ¶6, 241 Wis. 2d 350, 625 N.W.2d 619 (citing ***Severson v. Severson***, 71 Wis. 2d 382, 387, 238 N.W.2d 116 (1976)).  "The burden of showing that there has been a change in circumstances sufficient to justify a modification falls to the party seeking modification." ***Rottscheit v. Dumler***, 2003 WI 62, ¶11, 262 Wis. 2d 292, 664 N.W.2d 525.

¶15 Whether the moving party has shown a substantial change in circumstances is a question of law that we review de novo. ***Jalovec***, 305 Wis. 2d 467, ¶22.  Once that showing has been made, the circuit court "must exercise its

discretion as to modification of child support." *Id.*, ¶21. "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." *Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656.

¶16 Here, in granting Elnimeiry's motion to modify child support, the circuit court appears to have relied on its conclusion that it initially erred when it imputed an income of $130,000 to Elnimeiry. First, the court construed the following language from our earlier opinion as indicating that the court erred:

> Elnimeiry appears to argue that the circuit court erred as a matter of law in imputing income to him based on his earning capacity, as opposed to his actual earnings, because there is no evidence showing that he unreasonably sought lower paying, half-time positions "to defeat his child support obligations." *See Chen v. Warner*, 2005 WI 55, ¶20, 280 Wis. 2d 344, 695 N.W.2d 758 (In determining child support, a circuit court may consider a parent's earning capacity if it finds that the parent's "decision to reduce or forgo income is voluntary and unreasonable under the circumstances.").
>
> However, as related above, Elnimeiry did not make this argument before the circuit court…. We conclude that Elnimeiry has forfeited his right to raise this argument on appeal and fails to provide a reason that we should entertain the argument despite his failure to preserve it in the circuit court.

*Elnimeiry*, Nos. 2023AP528 and 2023AP768, ¶¶31-32. Based on this excerpt, the court stated, "What I learned from that is I might have done it wrong, that I focused on an imputation of income without pausing, stepping back and undertaking, I guess, the inquiry that the *Chen* case requires …." The court concluded, "[O]ne change in circumstances is [that] … according to the [c]ourt of [a]ppeals, I did it wrong the first time."

8

¶17 "Secondarily," the circuit court determined, "we do have a change in the sense that was then, this is now." The court explained that it did not initially believe Elnimeiry regarding his earning potential, but that it believed him now. In stating why it now believed Elnimeiry, the court noted that Elnimeiry: went to a medical school in the Caribbean as opposed to one higher in the "pecking order"; had to take the medical licensing exam six times before passing; was terminated from his employment in Edgerton; and had gaps and short stints of employment in his work history that would be red flags to potential employers. Although the court noted that this information was "nothing new," the court concluded that this information supported Elnimeiry's position that Elnimeiry could not obtain a job that would pay $130,000 annually. The court also relied on Elnimeiry's "substantial mental health issues," which had also been presented during the divorce proceedings, and his "flat" demeanor at the hearing, which led the court to believe that Elnimeiry would not interview well. The court further noted that there had been another two years of unsuccessful job searches since the divorce, although the court made no specific findings regarding the nature of those searches. Consistent with the court's reassessment of Elnimeiry's situation, the court stated:

> 99 percent of the people who tell me they can't [pay the amount of child support ordered] turn out that they can do it. It is the rare occasion in which the person who says I can't do it and find themself facing down jail time [on a contempt motion], that makes -- that's a change. I tested his resolve. And maybe his steely nerve and, as Ms. Benshili says, his resolve to thwart her happiness is driving his action, or maybe it is that I was wrong, and he can't do it.

¶18 We conclude that the circuit court erroneously exercised its discretion when it modified the amount that Elnimeiry was required to pay in child support because, as we explain below, the court did not identify a "substantial

9

change in circumstances" and instead retried issues that it had already determined.[5]

¶19 Regarding the circuit court's reliance on our prior opinion, we note that nothing in that opinion suggests that the circuit court erred in imputing income of $130,000 to Elnimeiry, either at the time of the divorce proceedings or during the postdivorce proceedings. More importantly, the court's revisiting of its findings based on what it acknowledged was largely the same evidence presented in the earlier proceedings does not constitute "a substantial change in circumstances" necessary to modify child support. Specifically, it does not constitute a "distinct and definite change in the financial circumstances of the parties or children." *Beaudoin*, 241 Wis. 2d 350, ¶6. And, as stated, a court's power to modify child support does not encompass "the power to grant a new trial or to re-try issues" that have already been determined. *Id.*

¶20 For these same reasons, the circuit court's reassessment of Elnimeiry's credibility and the evidence presented at the earlier proceedings is likewise not a "substantial change in circumstances." For example, the court did

---

[5] As stated, the substantial change in circumstances must be a change "in the circumstances upon which the existing payments were predicated." *Miller v. Miller*, 67 Wis. 2d 435, 442-43, 227 N.W.2d 626 (1975). Here, during the original divorce proceedings, the circuit court determined that Elnimeiry was capable of earning $130,000, and the court then denied Elnimeiry's first motion to modify child support. However, the court also granted Elnimeiry's motion for relief from the divorce judgment and determined that Elnimeiry presented new evidence that warranted a revised finding that Elnimeiry could work 20 hours per week rather than full time. The parties do not argue whether Elnimeiry was required to show a substantial change in circumstances from the time of the divorce proceedings or from the time of the court's decision on Elnimeiry's first motion to modify child support and motion to modify judgment (which we refer to as "the postdivorce proceedings"). We need not address this issue because we conclude that Elnimeiry failed to show a substantial change in circumstances from either the divorce proceedings or the postdivorce proceedings (which we refer to collectively as "the earlier proceedings").

not find that although Elnimeiry was capable of earning $130,000 during the earlier proceedings, he no longer was at the time of the hearing on Elnimeiry's current modification motion due to a change in his financial circumstances from the earlier proceedings. Instead, the court impermissibly relitigated the issues based largely on the same evidence presented in the earlier proceedings.

¶21 In sum, we conclude that the circuit court erroneously exercised its discretion when it modified Elnimeiry's child support obligation based on the erroneous conclusion that Elnimeiry had shown a substantial change in circumstances.

¶22 Elnimeiry's arguments to the contrary fail. He argues that he "presented credible evidence of substantially reduced income, unsuccessful job-search efforts, medically documented conditions affecting work capacity, and ongoing financial hardship," all of which he argues "represent[s] a material change from the circumstances at the time support was originally set." However, as we explain below, Elnimeiry does not argue, nor do we discern, that any of the evidence that he points to shows a substantial change in circumstances from the earlier proceedings.

¶23 Regarding Elnimeiry's "substantially reduced income," because the circuit court set child support based on Elnimeiry's imputed income, any reduction in Elnimeiry's actual income would not present a basis to modify child support. And in any event, Elnimeiry's actual annual income at the time of his current modification motion was more than what his actual annual income at the time of divorce appears to have been, based on his financial disclosure statements, and it was approximately the same as what his actual income was at the time of his first modification motion.

¶24 Regarding Elnimeiry's "medically documented conditions affecting work capacity," the circuit court originally found during the divorce proceedings that Elnimeiry was diagnosed with ADHD and anxiety in 2017 and that he had "a physical and mental condition that affect[ed] his employability," the same medical conditions he relies on now. As to Elnimeiry's "ongoing financial hardship," Elnimeiry does not identify, nor do we discern, evidence demonstrating financial hardship that existed at the time of Elnimeiry's current modification motion that did not exist at the time of the earlier proceedings.

¶25 Finally, with respect to the evidence of "unsuccessful job efforts," as the circuit court pointed out, there was new evidence showing that Elnimeiry, in the approximately two years following the divorce judgment, was unable to find a job that paid $130,000. However, as stated, in the absence of a "substantial change" in his or the children's financial circumstances, Elnimeiry's motion to modify child support was not an opportunity to relitigate his earning potential.[6]

## II. Contempt

¶26 Benshili argues that the circuit court erroneously exercised its discretion in denying Benshili's motion for contempt because the court found that

---

[6] Elnimeiry, who is pro se, makes a number of additional arguments that we do not address. These include arguments that: the $580 monthly payment that he makes for his father's vehicle is "a proper marital debt," no evidence supports Benshili's testimony that Elnimeiry said he would not pay child support if Benshili sought custody or placement of the children, Elnimeiry initially paid the $1,261 in monthly child support for several months, Elnimeiry's "unrestricted" medical license does not contradict the fact that he has health-related work limitations, and inconsistencies in Benshili's financial disclosures undermine her credibility. We do not address these arguments because Elnimeiry does not explain, nor do we discern, how they are relevant to the issue of whether the circuit court erroneously exercised its discretion in granting Elnimeiry's motion to modify child support. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that this court need not consider arguments that are unsupported by legal authority or are otherwise undeveloped).

Elnimeiry had not paid child support as ordered, was intentionally and unreasonably underemployed, and had arbitrarily chosen to pay less than he was able.

¶27 Contempt of court includes the intentional "[d]isobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b). "A person may be held in contempt of court if he or she has the ability, but refuses, to comply with a circuit court order." **Benn v. Benn**, 230 Wis. 2d 301, 309, 602 N.W.2d 65 (Ct. App. 1999); *see also* WIS. STAT. § 785.02 ("A court of record may impose a remedial or punitive sanction for contempt of court …."). In order to find a person in contempt for failure to pay child support, a court must find that: "(1) the person is able to pay, and (2) the refusal to pay is willful and with intent to avoid payment." **Benn**, 230 Wis. 2d at 310.

¶28 We review a court's use of its contempt power for an erroneous exercise of discretion. **State ex rel. N.A. v. G.S.**, 156 Wis. 2d 338, 341, 456 N.W.2d 867 (Ct. App. 1990). We will uphold a circuit court's factual findings relating to contempt unless they are clearly erroneous. **Krieman v. Goldberg**, 214 Wis. 2d 163, 169, 571 N.W.2d 425 (Ct. App. 1997).

¶29 Here, in denying Benshili's contempt motion, the circuit court found that "Elnimeiry has established that his nonpayment of the amount I ordered was not intentional or voluntary." As Benshili points out, the court also found that Elnimeiry was intentionally and unreasonably working fewer hours than he was able, and Benshili argues that these findings "cannot be reconciled."

¶30 In deciding the contempt motion, the circuit court appears to have relied on its decision to grant Elnimeiry's motion to modify child support—that is, the court relied on the fact that it had already determined that there was a

13

substantial change in circumstances, that Elnimeiry was not capable of earning $130,000 per year, and that, as a result, Elnimeiry was not able to pay $1,261 in monthly child support as ordered during the earlier proceedings. For example, at the beginning of the hearing, the court stated, "[N]o matter which way you come at it, either a motion to modify or contempt motion, sort of all roads point to [the same issue]." The court also stated that the contempt and modification issues "logically … go hand in hand." Additionally, earlier in the hearing, the court suggested that it would not hold Elnimeiry in contempt because it believed that it had erred when it determined child support in the earlier proceedings.

¶31    However, as we have explained, the circuit court erroneously exercised its discretion when it granted Elnimeiry's motion to modify child support based on its determination that Elnimeiry had shown a substantial change in circumstances, and in determining that Elnimeiry was not able to earn $130,000 per year. As previously concluded, in reaching these determinations, the court improperly retried the issue of Elnimeiry's earning potential. Because the court's decision on the issue of contempt was based on its erroneous exercise of discretion in granting Elnimeiry's motion to modify child support, and in light of the court's seemingly contradictory findings noted above, we remand so that the circuit court may properly exercise its discretion in determining whether Elnimeiry is in contempt and, if so, whether to impose contempt sanctions. *State v. Eckola*, 2001 WI App 295, ¶16, 249 Wis. 2d 276, 638 N.W.2d 903 ("When the circuit court has made an error that underlies the exercise of its discretion, we may not exercise the court's discretion for it. Rather, we are to remand to permit the court to exercise its discretion."); *LaRocque v. LaRocque*, 139 Wis. 2d 23, 43, 406 N.W.2d 736

(1987) ("[W]e conclude that we cannot and should not exercise the discretion which is properly the circuit court's.").[7]

## CONCLUSION

¶32    For the reasons stated, we reverse the circuit court's order granting Elnimeiry's motions to modify child support and denying Benshili's motion for contempt. We remand for the circuit court to enter an order denying Elnimeiry's modification motions and to properly exercise its discretion in determining whether Elnimeiry is in contempt and, if so, whether to impose contempt sanctions.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Benshili notes that the circuit court found that Elnimeiry was capable of paying more than the $300 per month in child support that he paid and that he intentionally and unreasonably worked fewer hours than he could, and Benshili argues that "these facts compel a finding of contempt." However, as noted, the court also found that Elnimeiry did not intentionally disobey the court's child support order. To the extent this last finding is inconsistent with the findings upon which Benshili relies, it does not necessarily follow that a finding of contempt is compelled; rather, it would mean that either the first set of findings or the last finding is erroneous. Moreover, Benshili does not provide, nor has our limited research identified, any case law in which an appellate court has determined that a determination of contempt was compelled. Accordingly, we reject Benshili's argument that a finding of contempt is compelled. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that this court need not consider arguments that are unsupported by legal authority). Instead, we remand so that the circuit court may properly exercise its discretion on the issue of contempt.